## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CITY OF RIVIERA BEACH GENERAL EMPLOYEES' RETIREMENT SYSTEM, on behalf of itself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>VERTIV HOLDINGS CO, ROB JOHNSON, DAVID FALLON, JASON FORCIER, GARY NIEDERPRUEM, DAVID COTE, JOSEPH VAN DOKKUM, ROGER FRADIN, JACOB KOTZUBEI, MATTHEW LOUIE, EDWARD L. MONSER, STEVEN S. REINEMUND, ROBIN L. WASHINGTON, J.P. MORGAN SECURITIES LLC, GOLDMAN SACHS & CO. LLC, CITIGROUP GLOBAL MARKETS INC., VPE HOLDINGS, LLC, VERTIV JV HOLDINGS LLC, PE VERTIV HOLDINGS LLC, PLATINUM EQUITY, LLC, PLATINUM EQUITY INVESTMENT HOLDINGS, LLC, PLATINUM EQUITY INVESTMENT HOLDINGS MANAGER, LLC, PLATINUM EQUITY INVESTCO, L.P., PLATINUM EQUITY INVESTMENT HOLDINGS IC (CAYMAN), LLC, PLATINUM INVESTCO (CAYMAN), LLC, PLATINUM EQUITY INVESTMENT HOLDINGS III, LLC, PLATINUM EQUITY INVESTMENT HOLDINGS MANAGER III, LLC, and TOM GORES,<br><br>Defendants. | Case No. 1:22-cv-3572<br><br>CLASS ACTION<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>DEMAND FOR JURY TRIAL |

Plaintiff City of Riviera Beach General Employees' Retirement System ("Riviera Beach" or "Plaintiff"), on behalf of itself all others similarly situated, by and through its counsel, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, *inter alia*, counsel's investigation, which includes: (a) review and analysis of regulatory filings made by Vertiv Holdings Co ("Vertiv" or the "Company") with the United States Securities and Exchange Commission ("SEC"); (b) press releases, presentations, and media reports issued by and disseminated by the Company; (c) analyst and media reports concerning Vertiv; and (d) other public information concerning Vertiv.

## INTRODUCTION

1. This is a securities class action on behalf of persons and entities that: (a) purchased shares of Vertiv's Class A common stock between February 24, 2021, and February 23, 2022, inclusive (the "Class Period"); and/or (b) purchased Vertiv shares in or traceable to the Company's secondary public offering of Class A common stock conducted on or around November 4, 2021 (the "SPO").

2. The claims asserted herein are alleged against Vertiv and certain of the Company's officers, members of Vertiv's Board of Directors, including the directors that signed the Registration Statement (defined below) for the SPO, the Selling Shareholders (defined below), and the underwriters of the SPO (collectively, "Defendants"), and arise under Sections 11, 12(a)(2), and 15 of the Securities Act of 1933 (the "Securities Act"), and Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5, promulgated thereunder.

3. Vertiv designs, manufactures, and services critical digital infrastructure technologies and life cycle services for data centers, communication networks, and commercial and industrial environments. Vertiv offers software solutions as well as a range of hardware

solutions to its customers throughout the global data center industry.  In connection with its hardware business, Vertiv engages in manufacturing and global supply chain logistics that are susceptible to cost fluctuation deriving from the inflation of material, manufacturing, and supply chain pricing.

4.      Throughout the Class Period, Vertiv repeatedly touted its robust pricing capabilities, which purportedly enabled it to improve the Company's operating margins even in the face of constrained supply chains.  For example. the Company repeatedly touted that its "procurement and pricing initiatives drove contribution margin improvement."  Even as the Company felt increasing inflationary and supply chain pressures, it continued to assure investors that its "pricing initiatives have continued to yield favorable results."  While the Company also acknowledged the rising cost of raw materials, it assured investors that it would maintain and even grow margins by passing along those costs to its customers.

5.      In the Offering Materials (defined below) issued in connection with the SPO and throughout the Class Period, Vertiv made these same representations, stating "[m]argin improved primarily due to fixed cost savings and contribution margin improvements (volume leverage, operation productivity, and pricing)" in its Form 10-Q for the first quarter 2021 which was expressly incorporated by reference into the Offering Materials.  The SPO closed on or about November 4, 2021, and VPE Holdings, LLC (an affiliate of Platinum Equity, LLC) ultimately sold 20 million shares of Vertiv Class A common stock at $24.83 per share, reaping over $496 million in gross proceeds.

6.      Contrary to the Company's representations, however, Vertiv's "pricing initiatives" were ineffective and the Company's sales force was not capable of driving higher pricing and

passing costs on to customers.  Instead, the sales team had resorted to discounting in order to drive sales and build the Company's backlog, which resulted in lower margins and profitability.

7.     The truth began to emerge on February 23, 2022, when Vertiv released dismal financial results for the fourth quarter and full year ended December 31, 2021.  That day, analysts published that the Company's reported adjusted operating income was 43% below the low end of management's own guidance range and profits missed by 45% on weak margins.  Vertiv attributed its poor financial results to "negative net-price cost" and revealed that its highly touted "pricing initiatives" only offset a fraction of the $190 million of material and freight inflation experienced during the final quarter.  Vertiv's Executive Chairman, Defendant David Cote, admitted that the Company "underestimated [its] ability to get price historically, not just currently," which stands in stark contrast to Vertiv's representations about its ability to raise prices to outpace inflationary and supply chain pressures.  The Company also admitted that over the last 90 days it had instituted tighter controls over its sales force to take away their ability to "discount to grow the backlog and grow the business"—indicating that the sales force was actually offering discounted product during the Class Period rather than adhering to the Company's "pricing initiatives" as Vertiv had stated.

8.     Analysts were shocked by the Company's poor earnings announcement, with analysts from Deutsche Bank Research reporting that "a miss of this magnitude warranted a pre-announcement."  Wolfe research reported that "In our 17 years of covering industrials we can't recall a drawdown of this magnitude, even during the [Great Financial Crisis]" and that "management credibility is completely shot."

9.     As a result of these disclosures, the price of Vertiv stock declined by $7.19 per share, or over 36%.

10.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's shares, Plaintiff and putative Class members have suffered significant losses and damages.  Plaintiff and putative Class members seek damages for redress, reasonable attorneys' fees, injunctive relief, and all other relief this Court deems just and proper.

## JURISDICTION AND VENUE

11.     The claims asserted herein arise under Sections 11, 12(a)(2), and 15 of the Securities Act (15 U.S.C. §§ 77k, 77l(a)(2), and 77o) and Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)), and Rule 10b-5 promulgated thereunder (17 C.F.R. § 240.10b-5).  This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1337, Section 22 of the Securities Act (15 U.S.C § 77v), and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

12.     Venue is proper in this District under Section 22 of the Securities Act (15 U.S.C. § 77v), Section 27 of the Exchange Act (15 U.S.C. § 78aa), and 28 U.S.C. § 1391(b), (c), and (d). Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District. Many of the acts charged herein, including the dissemination of materially false and/or misleading information, occurred in substantial part in this Judicial District.  In addition, at all relevant times Vertiv's common stock was offered, sold, and traded on the New York Stock Exchange ("NYSE"), which is located in this District.

13.     In connection with the acts alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

## PARTIES

**A.      Plaintiff**

14.      Plaintiff Riviera Beach provides retirement benefits to eligible general employees of the City of Riviera Beach, Florida.  As indicated in the certification submitted herewith, Plaintiff purchased shares of Vertiv Class A common stock at artificially inflated prices during the Class Period, including shares purchased in and/or traceable to the SPO, and suffered damages as a result of the violations of the federal securities laws alleged herein.

**B.      Corporate Defendant**

15.      Defendant Vertiv is a data center solutions company, focused on the development and sale of hardware, software, and analytics for the global data center industry.  Incorporated in Delaware, the Company maintains its corporate headquarters at 1050 Dearborn Drive, Columbus, Ohio.  The Company is the issuer of the shares sold in the SPO.  Vertiv's common stock trades on NYSE under ticker symbol "VRT."  As of February 22, 2022, Vertiv had over 375 million shares of Class A common stock outstanding, owned by hundreds or thousands of investors.

**C.      Officer Defendants**

16.      Defendant Rob Johnson ("Johnson") is, and was at all relevant times, Vertiv's Chief Executive Officer ("CEO") and a Director of the Company.  Defendant Johnson signed the Registration Statement for the SPO and is therefore liable under the Securities Act for the untrue and misleading statements and omissions in the Offering Materials.

17.      Defendant David Fallon ("Fallon") is, and was at all relevant times, Vertiv's Chief Financial Officer ("CFO").  Defendant Fallon signed the Registration Statement for the SPO and is therefore liable under the Securities Act for the untrue and misleading statements and omissions in the Offering Materials.

18.     Defendant Jason Forcier ("Forcier") is, and was at all relevant times, Vertiv's Chief Operations Officer ("COO").

19.     Defendant Gary Niederpruem ("Niederpruem") is, and was at all relevant times, Vertiv's Chief Strategy and Development Officer.

20.     Defendants Johnson, Fallon, Forcier, and Niederpruem are collectively referred to hereinafter as the "Officer Defendants."  The Officer Defendants, because of their positions with Vertiv, possessed the power and authority to control the contents of the Company's reports to the SEC, press releases, and presentations to securities analysts, money and portfolio managers, and institutional investors.  Each of the Officer Defendants was provided with copies of the Company's reports, presentations, and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.  Because of their positions and access to material non-public information available to them, each of the Officer Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading.

**D.      Director Defendants**

21.     Defendant David Cote ("Cote") is, and was at all relevant times, Executive Chairman of the Board of Directors of Vertiv.  Defendant Cote signed the Registration Statement for the SPO and is therefore liable under the Securities Act for the untrue and misleading statements and omissions in the Offering Materials.

22.     Defendant Joseph van Dokkum ("van Dokkum") is, and was at all relevant times, a Director of Vertiv.  Defendant van Dokkum signed the Registration Statement for the SPO and is therefore liable under the Securities Act for the untrue and misleading statements and omissions in the Offering Materials.

23.     Defendant Roger Fradin ("Fradin") is, and was at all relevant times, a Director of Vertiv.  Defendant Fradin signed the Registration Statement for the SPO and is therefore liable under the Securities Act for the untrue and misleading statements and omissions in the Offering Materials.

24.     Defendant Jacob Kotzubei ("Kotzubei") is, and was at all relevant times, a Director of Vertiv.  Defendant Kotzubei is also, and was at all relevant times, a partner for Defendant Platinum Equity, LLC.  Defendant Kotzubei signed the Registration Statement for the SPO and is therefore liable under the Securities Act for the untrue and misleading statements and omissions in the Offering Materials.

25.     Defendant Matthew Louie ("Louie") is, and was at all relevant times, a Director of Vertiv.  Defendant Louie is also, and was at all relevant times, a managing director for Defendant Platinum Equity, LLC.  Defendant Louie signed the Registration Statement for the SPO and is therefore liable under the Securities Act for the untrue and misleading statements and omissions in the Offering Materials.

26.     Defendant Edward L. Monser ("Monser") is, and was at all relevant times, a Director of Vertiv.  Defendant Monser signed the Registration Statement for the SPO and is therefore liable under the Securities Act for the untrue and misleading statements and omissions in the Offering Materials.

27.     Defendant Steven S. Reinemund ("Reinemund") is, and was at all relevant times, a Director of Vertiv.  Defendant Reinemund signed the Registration Statement for the SPO and is therefore liable under the Securities Act for the untrue and misleading statements and omissions in the Offering Materials.

28.     Defendant Robin L. Washington ("Washington") is, and was at all relevant times, a Director of Vertiv.  Defendant Washington signed the Registration Statement for the SPO and is therefore liable under the Securities Act for the untrue and misleading statements and omissions in the Offering Materials.

29.     Defendants Johnson, Fallon, Cote, van Dokkum, Fradin, Kotzubei, Louie, Monser, Reinemund, and Washington are collectively referred to hereinafter as the "Offering Defendants." Each of the Offering Defendants signed the Registration Statement.  The Offering Defendants, because of their positions with Vertiv, possessed the power and authority to control the contents of the Offering Materials.

### E.     Selling Shareholder Defendants

30.     Defendant VPE Holdings, LLC ("VPE Holdings") is incorporated in the state of Delaware and sold the shares offered in the SPO.  The business address of VPE Holdings is 360 North Crescent Drive, South Building, Beverly Hills, CA.

31.     The owners and beneficiaries of VPE Holdings are Vertiv JV Holdings LLC ("JV Holdings") and PE Vertiv Holdings LLC ("PE Holdings" and, together with JV Holdings, the "Holding Defendants").

32.     Defendant JV Holdings is incorporated in the state of Delaware and is the majority owner of VPE Holdings.  The business address of JV Holdings is 360 North Crescent Drive, South Building, Beverly Hills, CA.

33.     Defendant PE Holdings is incorporated in the state of Delaware and is a majority owner of JV Holdings.[1]  The business address of PE Holdings is 360 North Crescent Drive, South Building, Beverly Hills, CA.

---

[1] Vertiv JV Holdings, LLC owns a majority of the outstanding equity interests of VPE Holdings, LLC, and PE Vertiv Holdings, LLC owns a majority of the outstanding interests of Vertiv JV Holdings, LLC, and, accordingly, each may

34.     Defendant Platinum Equity, LLC is a Los Angeles, California based investment manager and private equity firm. Platinum Equity, LLC and its affiliated funds are the listed owners and beneficiaries of the Holding Defendants.  As set forth herein, Platinum Equity, LLC and its affiliated funds—including the following entities: Platinum Equity Investment Holdings, LLC, Platinum Equity Investment Holdings Manager, LLC, Platinum Equity InvestCo, L.P., Platinum Equity Investment Holdings IC (Cayman), LLC, Platinum InvestCo (Cayman), LLC, Platinum Equity Investment Holdings III, LLC, Platinum Equity Investment Holdings Manager III, LLC—(collectively, "Platinum Equity") had the power to control, and did control Vertiv, throughout the Class Period.

35.     Accordingly, as a result of their indirect ownership and control of VPE Holdings and the Holding Defendants, Platinum Equity may be deemed to beneficially own the shares that are owned directly by VPE Holdings.

36.     Defendant Tom Gores ("Gores") is the Chairman and Chief Executive Officer of Platinum Equity and had the power and authority to control the Holding Defendants and VPE Holdings. According to SEC filings, Defendant Gores may be deemed to beneficially own the shares that are owned directly by VPE Holdings.

37.     Defendants VPE Holdings, the Holding Defendants, Defendant Gores, and Platinum Equity are collectively referred to hereinafter as the "Selling Shareholders."  The Selling Shareholders controlled Vertiv before, during, and immediately after the SPO.

### F.     Underwriter Defendants

38.     Defendant J.P. Morgan Securities LLC ("J.P. Morgan") served as an underwriter and joint book-running manager of the SPO.  As an underwriter of the SPO, J.P. Morgan was

---

be deemed to beneficially own the shares owned directly by VPE Holdings, LLC.

responsible for ensuring the truthfulness and accuracy of the various statements contained in or incorporated by reference into the Offering Materials (defined below).

39.     Defendant Goldman Sachs & Co. LLC ("Goldman Sachs") served as an underwriter and joint book-running manager of the SPO.  As an underwriter of the SPO, Goldman Sachs was responsible for ensuring the truthfulness and accuracy of the various statements contained in or incorporated by reference into the Offering Materials (defined below).

40.     Defendant Citigroup Global Markets Inc. ("Citigroup") served as an underwriter of the SPO.  As an underwriter of the SPO, Citigroup was responsible for ensuring the truthfulness and accuracy of the various statements contained in or incorporated by reference into the Offering Materials (defined below).

41.     Defendants J.P. Morgan, Goldman Sachs, and Citigroup are collectively referred to hereinafter as the "Underwriter Defendants."

## BACKGROUND

42.     Based in Columbus, Ohio, Vertiv designs, manufactures, and services critical digital infrastructure technologies and life cycle services for data centers, communication networks, and commercial and industrial environments.   Vertiv's offerings include power management products, thermal management products, integrated rack systems, modular solutions, and management systems for monitoring and controlling digital infrastructure that are integral to the technologies used for various services.

43.     The Company was established in 2016 after Platinum Equity acquired Emerson Electric Co.'s network-power division for $4 billion and rebranded it as "Vertiv."

44.     On February 7, 2020, Vertiv went public through a merger with GS Acquisition Holdings Corp., a special purpose acquisition company ("SPAC").  Upon the closing of the transaction, Platinum Equity held approximately 38% of the outstanding common stock of Vertiv.

## DEFENDANTS' MATERIALLY FALSE AND MISLEADING STATEMENTS CAUSE SUBSTANTIAL LOSSES TO INVESTORS

45.     On or around November 4, 2021, Vertiv conducted the SPO pursuant to a registration statement that the Company filed on February 7, 2020 and declared effective with the SEC on February 7, 2020 (the "Registration Statement").  On November 3, 2021, Vertiv filed a prospectus for the SPO on Form 424B1 (the "Prospectus"), which formed part of the Registration Statement (collectively, the "Offering Materials").  The Registration Statement was signed by the Offering Defendants.  By means of the Offering Materials, VPE Holdings offered and sold 20 million shares of Vertiv Class A common stock at $24.83 per share, resulting in over $496 million in gross proceeds.

46.     The Class Period begins on February 24, 2021, when the Company issued a press release announcing its fourth quarter and full year 2020 results.  In the press release, which the Company filed with the SEC on Form 8-K, Vertiv reported fourth quarter net income of $75 million and adjusted EBITDA of $187 million, with adjusted EBITDA margins increasing 160 basis points to 14.3% year over year.

47.     Later that day, Vertiv held a conference call with analysts and investors to discuss the Company's 2020 results.  During the call, Defendant Johnson attributed the Company's financial results and margin expansion to "very good performance in supply chain" (per the Company's slide presentation) and "pricing initiatives" (i.e. passing cost along to customers) which "continued to yield favorable results."  Johnson further touted its "pricing initiatives" stating that the "foundation we've established and the trajectory that we are on, gives me confidence in our ability to achieve the expansion plans we laid out a year ago."  On this call, Vertiv announced, it transitioned from reporting the measure of profitability as EBITDA to reporting adjusted operating profit.

48.     On April 28, 2021, the Company reported first quarter 2021 results with strong net sales growth, an uptick in orders, operating profit of $80 million, and adjusted operating profit of $112 million.  Vertiv also reported an operating profit margin of 7.3% and adjusted operating profit margin of 10.2%.  Adjusted operating margin was 790 basis points higher than prior year first quarter as well.  Earnings per share of $0.09 and adjusted earnings per share of $0.21 exceeded guidance.  Vertiv raised full year 2021 net sales, adjusted operating profit and adjusted EPS guidance.

49.     On the earnings call following the gleaming first quarter reporting, Johnson signaled that the market was facing "supply chain and commodity cost challenges . . . Vertiv is not exempt."  Johnson went on to reassure investors and stated that the Company was "aggressively working to secure supply needed . . . while developing and executing strategies to share the cost with our customers . . . because supply chain constraints coupled with inflation, we will see some *incremental unexpected costs over the short term.*" (emphasis added).

50.     Johnson explained that the Company had two major concerns deriving from the inflation and supply chain issues.  The first issue concerned parts and material shortages.  However, Johnson reassured investors that "*For the most part, we've identified solutions for those.*" (emphasis added).  The second issue concerns cost increases for logistics and materials, and again, provides reassurance to investors, "*This is being tracked and managed and closely monitored, and we are taking actions to offset the increased costs.*"  (emphasis added).

51.     On July 28, 2021, the Company reported second quarter 2021 results.  Sales were up 25% and orders were up over 24% providing Vertiv with the largest backlog in the Company's history.  Vertiv's adjusted operating profit was $134 million, which was 30% higher than second quarter 2020 results.  During the Company's earnings call held that day, CEO Johnson stated that

having sales and orders growth in excess of 20% in the back-to-back quarters demonstrates Vertiv's customer first approach and that putting customers first was paying off.  However, aside from the positive reporting, margins were beginning to shrink.

52.     Sentiment was positive on the second quarter earnings call, Johnson touched on the Company's margin decline, the Company's ability to raise customer prices, and its struggle with supply chain and inflation issues.  He explained that "pricing always lags cost by a quarter or two, and that's exactly what we're seeing now."  Johnson went on to say that "[w]e anticipate full recovery by Q4 as headwinds stabilize and the pricing plan is fully implemented.  And as mentioned, we are expecting a net tailwind in 2022 for this activity . . . pricing actions were actually underway at the beginning of Q2 as we began to see this inflationary environment."  In addition, on the same call, Defendant Fallon stated "and we believe the pricing actions we are implementing today will generate a nice tailwind for 2022."

53.      During that same call, Fallon also touted that, exogenous of the short-term margin erosion, the Company was "reaffirming our adjusted operating margin targets of 16% in the intermediate terms and 20% in the long term."

54.     However, analysts felt differently and were concerned that recovery by the fourth quarter of 2021 through aggressive price increases was too little too late.  Analysts understood that while the Company assured investors it could raise prices to meet inflationary pressures, a backlog of pre-booked orders already existed reflecting established pricing going forward.  In response to a question from an analyst, Defendant Johnson answered [a]s you know, we feed a lot off of our backlog and some of those things in our backlog we can look at price, we can look at freight, but for the most part as we've indicated on the call, you'll see that really kind of come to life in [the third quarter and fourth quarter]. So, we know orders that we got in Q2 that we'll ship in Q3, Q4

and Q1. We know we've got price on those. So that's why we feel confident that we will get the price and we are getting the price, so that's the first thing."

55.     Johnson continued, "We've talked about it in the past where we've instituted some AI and really the pricing tools that allow our salespeople to understand when we lose at what price and when we win. . . . So, we continue to believe that your pricing will be one of those levers that we will continue to drive for years to come, but I feel good about where we're at.  I feel good about the methodologies that we have. . . . "

56.     On the same call, Defendant Niederpruem hinted to the inelasticity of Vertiv's prices and that customers would not pay more.  Niederpruem added, "we do think most of the pricing that we're going to get right now is sticky.  It's not going to be 100%, but the majority of that pricing should be sticky as we head into 2022."

57.     On October 27, 2021, the Company reported third quarter 2021 financial results. Supply chain issues continued to accelerate rapidly in the third quarter and general sentiment was shifting negatively.  At the beginning of the third quarter 2021 earnings call, Defendant Cote began "we need to get ahead of the price inflation curve . . . this is a painful and an irritating time to deal with; it is what it is."

58.     Fallon reported that adjusted operating margin was 10.7%, down approximately 200 basis points lower than the year before.[2]  Fallon explained that "Contribution margin in the third quarter continued to be negatively impacted by material and freight inflation, which *outpaced* our pricing. . . . We expect to further narrow the imbalance between inflation and price in the fourth

---

[2] The 200 basis point figure is derived from prior years adjusted operating margin, which was adjusted for restructuring and asset write-offs.  As stated by Vertiv in the third quarter 2021 earnings call "this year-over-year reduction is driven entirely by net inflation."

quarter and expect net price inflation to be favorable for full year 2022 as a result of incremental pricing actions in the fourth quarter and into next year."  (emphasis added).

59.     Johnson reassured investors that the Company had overcome the supply chain issues.  On the same call, he stated "What's going to be the limiting factor for further growth . . . is going to be that material and labor shortages in probably their end. . . . I'm very bullish right now that get these supply issues behind us. . . ."

60.     On November 4, 2021, the SPO closed.  VPE Holdings, an affiliate of Platinum Equity, LLC, sold 20 million shares of Vertiv Class A common stock at $24.83 per share, reaping over $496 million in gross proceeds. The statements set forth above in ¶¶47-59 were materially false and misleading and failed to disclose material facts necessary to make the statements made, in light of the circumstances in which they were made, not false and misleading.  As a result, the positive statements made by Vertiv, the Officer Defendants, and the Offering Defendants about the Company's business, operations, and prospects, including its 2020 and 2021 financial guidance, were materially misleading and/or lacked a reasonable basis.  In addition, to the extent the Company purported to warn of risks with regard to inflation and supply chain concerns, Vertiv the Officer Defendants, and the Offering Defendants omitted that such risks had already materialized.

61.     On November 4, 2021, the SPO closed.  VPE Holdings, an affiliate of Platinum Equity, LLC, sold 20 million shares of Vertiv Class A common stock at $24.83 per share, reaping over $496 million in gross proceeds.

## THE TRUTH EMERGES

62.     On February 23, 2022, the Company released its fourth quarter and full year results for 2021.  On the February 23, 2022 earnings call, CEO Johnson cathartically threw up his hands and told investors "In short, we screwed up. . . ."  The truth began to emerge on February 23, 2022,

when the Company released its fourth quarter and full year results for 2021, which its executive chairman, Defendant Cote, described as "embarrassing" during the Company's fourth quarter 2021 earnings call.  The Company blamed its dismal numbers and lackluster pricing on unprecedented inflation and supply chain expenditures and Defendant Cote admitted that it had "underestimated [its] ability to get price historically, not just currently, but historically."

63.    The Company had quarterly earnings of $0.04 per share, missing the Zacks Consensus Estimate of $0.28 per share.  Sales grew only modestly in Vertiv's fourth quarter, up 8% year over year.  Analysts published that the Company's reported adjusted operating income was 43% below the low end of management's own guidance range and profits missed by 45% on weak margins.

64.    Management blamed inflationary and supply chain pressures for its abysmal profit. Defendant Cote said, "I and the Vertiv team are disappointed and embarrassed by our second half 2021 and predicted first half 2022 financial performance.  We got behind on the inflation recovery curve with insufficient price and stayed there all year."

65.    CEO Johnson further stated, "We significantly underestimated the magnitude of the material and freight inflation in the fourth quarter forecast, mostly in Americas by approximately $36 million.  This underestimation costs also contributed to our underpricing in the market in 2021.  So it was a huge deal not only for cost but also price."

66.    Management warned that Vertiv's margin erosion as related to inflation and supply chain disruptions "continued to accelerate in the fourth quarter, and no significant improvement is currently assumed for [any point in] 2022."

67.     While the Company pointed to macroeconomic catalysts for their massive profit miss, the Company did not address that it saw price leakage from uncontrolled price discounting by its over 2,300 global sales staff.

68.     During the earnings call question-and-answer session, analysts unearthed this issue. Analysts asked about the Company's sales structure, questioning if the sales staff were compensated for booking sales where Vertiv took a loss.  An analyst from Melius Research began the charge and wanted "to get a sense of whether you need to change your sales commission structure . . . looks like your sales force is getting paid to book unprofitable contracts."  This was a reasonable concern given Vertiv's massive margin erosion combined with its established history of discounting price to secure business.

69.     Margin erosion resulting from uncontrolled sales discounting was not previously mentioned as a catalyst for the Company's financial hemorrhaging.  However, analysts continued to press the sales discounting issue on the earnings call after Johnson stated that the Company recently instituted tighter sales controls "so they don't have the ability just to discount to grow the backlog and grow the business . . . so that they don't have the freedom to just discount, to build backlog or to go book orders."

70.     Moments later, Johnson continued to discuss the Company's sales discounting issue, referring to it as "price leakage."  He stated, "we feel like the areas we need to really shore up was where that price leakage could happen on big deals in other areas and really push back on that and put higher levels of approval, so that we're not giving price away kind of further down in the organization."

71. After the earnings call, analysts called Vertiv's report "shockingly bad" and expressed that "we get anger shareholders feel . . . we do not trust management 100% on executing its plan."

72. The fourth quarter results ran contrary to repeated representations that Vertiv had pricing visibility of its products and services. Analysts reported that "a miss of this magnitude warranted a pre-announcement" as profits missed by 45% on weak margins. On this news, Vertiv's stock declined by $7.19 per share, or nearly 37%, wiping out $2.2 billion in shareholder value.

73. While the statements set forth above in ¶¶62-70 disclose certain problems, the statements fail to reveal the full truth and were thus materially false and/or misleading and failed to disclose material facts necessary to make the statements made, in light of the circumstances in which they were made, not false and misleading. In truth, Vertiv did not have accurate pricing discovery and its price/cost visibility throughout the period was not reflective of the Company's financial results and thus the Company's financial health. As a result, the positive statements made by Vertiv, the Officer Defendants, and the Offering Defendants about the Company's business, operations, and prospects, including its 2020 and 2021 financial guidance, were materially misleading and/or lacked a reasonable basis. In addition, to the extent the Company purported to warn of risks with regard to inflation and supply chain concerns, Vertiv, the Officer Defendants, and the Offering Defendants omitted that such risks had already materialized.

## **LOSS CAUSATION**

74. During the Class Period, as detailed herein, Defendants made materially false and misleading statements and omissions, and engaged in a scheme to deceive the market. This artificially inflated the price of Vertiv shares and operated as a fraud or deceit on the Class (as defined below). Later, when Defendants' prior misrepresentations and fraudulent conduct were

disclosed to the market, the price of Vertiv shares fell precipitously as the prior artificial inflation came out of the price over time.  As a result of their purchases of Vertiv shares during the Class Period, Plaintiff and other members of the Class suffered economic loss, *i.e.*, damages, under the federal securities laws.

## CLASS ACTION ALLEGATIONS

75.     Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons or entities that purchased or otherwise acquired: (a) shares of Vertiv Class A common stock in or traceable to the SPO; and/or (b) shares of Vertiv Class A common stock during the Class Period (the "Class").

76.     Excluded from the Class are Defendants and their families, directors, and officers of Vertiv and their families and affiliates.

77.     The members of the Class are so numerous that joinder of all members is impracticable.  The disposition of their claims in a class action will provide substantial benefits to the parties and the Court.  As of February 22, 2022, Vertiv had over 375 million shares of Class A common stock outstanding, owned by hundreds or thousands of investors.

78.     There is a well-defined community of interest in the questions of law and fact involved in this case.  Questions of law and fact common to the members of the Class which predominate over questions which may affect individual Class members include:

(a)     Whether Defendants violated the Securities Act and/or the Exchange Act;

(b)     Whether Defendants omitted and/or misrepresented material facts;

(c)     Whether Defendants' statements omitted material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading;

(d)     Whether the Officer Defendants and the Offering Defendants are personally

liable for the alleged misrepresentations and omissions described herein;

(e)     Whether Defendants knew or recklessly disregarded that their statements and/or omissions were false and misleading;

(f)     Whether Defendants' conduct impacted the price of Vertiv Class A common stock;

(g)     Whether Defendants' conduct caused the members of the Class to sustain damages; and

(h)     The extent of damage sustained by Class members and the appropriate measure of damages.

79.     Plaintiff's claims are typical of those of the Class because Plaintiff and the Class sustained damages from Defendants' wrongful conduct.

80.     Plaintiff will adequately protect the interests of the Class and has retained counsel experienced in class action securities litigation.  Plaintiff has no interests which conflict with those of the Class.

81.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  Joinder of all Class members is impracticable.

## **INAPPLICABILITY OF STATUTORY SAFE HARBOR**

82.     Vertiv's "Safe Harbor" warnings accompanying its forward-looking statements issued during the Class Period were ineffective to shield those statements from liability.

83.     Defendants are also liable for any false or misleading forward-looking statements pleaded herein because, at the time each such statement was made, the speaker knew the statement was false or misleading and the statement was authorized and/or approved by an executive officer of Vertiv who knew that the statement was false.  None of the historic or present tense statements made by Defendants were assumptions underlying or relating to any plan, projection, or statement

of future economic performance, as they were not stated to be such assumptions underlying or relating to any projection or statement of future economic performance when made, nor were any of the projections or forecasts made by Defendants expressly related to, or stated to be dependent on, those historic or present tense statements when made.

## PRESUMPTION OF RELIANCE

84.     At all relevant times, the market for Vertiv shares was an efficient market for the following reasons, among others:

(a)     Vertiv shares met the requirements for listing, and was listed and actively traded on NYSE, a highly efficient and automated market;

(b)     As a regulated issuer, Vertiv filed periodic public reports with the SEC and NYSE;

(c)     Vertiv regularly and publicly communicated with investors via established market communication mechanisms, including through regular disseminations of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

(d)     Vertiv was followed by several securities analysts employed by major brokerage firm(s) who wrote reports which were distributed to the sales force and certain customers of their respective brokerage firm(s).  Each of these reports was publicly available and entered the public marketplace.

85.     As a result of the foregoing, the market for Vertiv shares promptly digested current information regarding Vertiv from all publicly available sources and reflected such information in the price of Vertiv Class A common stock.  Under these circumstances, all purchasers of Vertiv Class A common stock during the Class Period suffered similar injury through their purchase of Vertiv Class A common stock at artificially inflated prices and the presumption of reliance applies.

86. A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class's claims are grounded on Defendants' material omissions. Because this action involves Defendants' failure to disclose material adverse information regarding Vertiv's business operations—information that Defendants were obligated to disclose—positive proof of reliance is not a prerequisite to recovery. All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in making investment decisions. Given the importance of pricing visibility and effective sales practices for the Company's margins and profitability, that requirement is satisfied here.

## COUNT I

**For Violations of Section 11 of the Securities Act**
**Against Vertiv, the Offering Defendants, and the Underwriter Defendants**

87. Plaintiff repeats, incorporates, and realleges each and every allegation contained above as if fully set forth herein.

88. This Count is brought pursuant to Section 11 of the Securities Act, 15 U.S.C. § 77k, on behalf of all members of the Class who purchased or otherwise acquired Vertiv Class A common stock sold pursuant or traceable to the SPO, and who were damaged thereby.

89. This Count expressly excludes and disclaims any allegation that could be construed as alleging fraud or intentional or reckless conduct, as this Count is solely based on claims of strict liability and/or negligence under the Securities Act. For purposes of asserting this Count, Plaintiff does not allege that Defendants acted with scienter or fraudulent intent, which are not elements of a Section 11 claim.

90. Vertiv is the registrant for the SPO. The defendants named herein were responsible for the contents and dissemination of the Offering Materials.

91.     As the issuer of the shares, Vertiv is strictly liable to Plaintiff and the Class for the misstatements and omissions contained in the Offering Materials.

92.     Liability on this Count is predicated on the Offering Defendants' signing of the Registration Statement for the SPO, and the Underwriter Defendants' participation underwriting the SPO, which was conducted pursuant to the Offering Materials.  The Offering Materials were false and misleading, contained untrue statements of material facts, omitted to state facts necessary to make the statements not misleading, and omitted to state material facts required to be stated therein.

93.     Plaintiff purchased shares in and/or traceable to the SPO.

94.     The value of Vertiv Class A common stock has declined substantially as a result of Defendants' violations, causing damage to those members of the Class that purchased or otherwise acquired Vertiv Class A common stock in and/or traceable to the SPO.

95.     Less than one year has elapsed since the time that Plaintiff discovered, or could reasonably have discovered, the facts upon which this Complaint is based.  Less than three years has elapsed since the time that the securities at issue in this Complaint were bona fide offered to the public.

96.     By reason of the foregoing, the defendants named in this Count are each jointly and severally liable for violations of Section 11 of the Securities Act to Plaintiff and the other members of the Class pursuant to Section 11(e).

## COUNT II

### For Violations of Section 12(a)(2) of the Securities Act
### Against the Underwriter Defendants

97.     Plaintiff repeats, incorporates, and realleges each and every allegation contained above as if fully set forth herein.

23

98.     This Count is brought pursuant to Section 12(a)(2) of the Securities Act, 15 U.S.C. § 77l(a)(2), on behalf of all members of the Class who purchased or otherwise acquired Vertiv Class A common stock in and/or traceable to the SPO, and who were damaged thereby.

99.     This Count expressly excludes and disclaims any allegation that could be construed as alleging fraud or intentional or reckless conduct, as this Count is solely based on claims of strict liability and/or negligence under the Securities Act.  For purposes of asserting this Count, Plaintiff does not allege that Defendants acted with scienter or fraudulent intent, which are not elements of a Section 12(a)(2) claim.

100.    The Underwriter Defendants were statutory sellers of Vertiv shares that were registered in the SPO pursuant to the Registration Statement and sold by means of the Offering Materials.  By means of the Offering Materials, the Underwriter Defendants sold millions of Vertiv shares through the SPO to members of the Class.  The Underwriter Defendants were at all relevant times motivated by their own financial interests.  In sum, the Underwriter Defendants were sellers, offerors, and/or solicitors of sales of the stock that was sold in the SPO by means of the materially false and misleading Offering Materials.

101.    The Offering Materials contained untrue statements of material fact and omitted other facts necessary to make the statements not misleading, and failed to disclose materials facts, as set forth above.

102.    Less than one year has elapsed since the time that Plaintiff discovered, or could reasonably have discovered, the facts upon which this Complaint is based.  Less than three years has elapsed since the time that the securities at issue in this Complaint were bona fide offered to the public.

103.     By reason of the foregoing, the Underwriter Defendants are liable for violations of Section 12(a)(2) of the Securities Act to Plaintiff and the other members of the Class who purchased or otherwise acquired Vertiv Class A common stock in and/or traceable to the SPO, and who were damaged thereby.

## COUNT III

**For Violations of Section 15 of the Securities Act**
**Against the Offering Defendants and the Selling Shareholders**

104.     Plaintiff repeats, incorporates, and realleges each and every allegation contained above as if fully set forth herein.

105.     This Count is brought pursuant to Section 15 of the Securities Act, 15 U.S.C. § 77o, on behalf of all members of the Class who purchased or otherwise acquired Vertiv Class A common stock in and/or traceable to the SPO, and who were damaged thereby.

106.     This Count expressly excludes and disclaims any allegation that could be construed as alleging fraud or intentional or reckless conduct, as this Count is solely based on claims of strict liability and/or negligence under the Securities Act.  For purposes of asserting this Count, Plaintiff does not allege that Defendants acted with scienter or fraudulent intent, which are not elements of a Section 15 claim.

107.     As set forth in Count One above, Vertiv is strictly liable under Section 11 of the Securities Act for untrue statements and omissions of material fact in the Offering Materials.

108.     The Offering Defendants and Selling Shareholders, by virtue of their positions, voting power, ownership, rights as against Vertiv, and/or specific acts were, at the time of the wrongs alleged herein and as set forth herein, controlling persons of Vertiv within the meaning of Section 15 of the Securities Act.  These defendants also had the power and influence, and exercised

the same, to cause Vertiv to engage in the acts described herein, including by causing Vertiv to conduct the SPO pursuant to the Offering Materials.

109.    By reason of the foregoing, the defendants named herein each were culpable participants in the violations of Sections 11 and 12(a)(2) of the Securities Act as alleged in Counts One and Two above, based on their having signed or authorized the signing of the Registration Statement and/or having otherwise participated in the process that allowed the SPO to be successfully completed.  The defendants named herein are liable for the aforesaid wrongful conduct and are liable, to the same extent Vertiv is liable under Section 11 of the Securities Act, to members of the Class who purchases or otherwise acquired Vertiv Class A common stock sold pursuant or traceable to the SPO, and who were damaged thereby.

## COUNT IV

### For Violations of Section 10(b) of the Exchange Act and Rule 10b-5
### Against Vertiv and the Officer Defendants

110.    Plaintiff repeats, incorporates, and realleges each and every allegation contained above as if fully set forth herein.

111.    During the Class Period, Vertiv and the Officer Defendants carried out a plan, scheme, and course of conduct which was intended to and, throughout the Class Period, did: (a) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (b) cause Plaintiff and other members of the Class to purchase Vertiv shares at artificially inflated prices.

112.    Vertiv and the Officer Defendants: (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's shares in an effort to

maintain artificially high market prices for Vertiv shares in violation of Section 10(b) of the Exchange Act and Rule 10b-5, promulgated thereunder.

113.    Vertiv and the Officer Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about the Company's financial well-being, operations, and prospects.

114.    During the Class Period, Vertiv and the Officer Defendants made the false statements specified above, which they knew or recklessly disregarded to be false and misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

115.    Vertiv and the Officer Defendants had actual knowledge of the misrepresentations and omissions of material fact set forth herein, or recklessly disregarded the true facts that were available to them. Vertiv and the Officer Defendants engaged in this misconduct to conceal Vertiv's true condition from the investing public and to support the artificially inflated prices of the Company's shares.

116.    Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for Vertiv shares.  Plaintiff and the Class would not have purchased the Company's shares at the prices they paid, or at all, had they been aware that the market prices for Vertiv shares had been artificially inflated by these defendants' fraudulent course of conduct.

117.    As a direct and proximate result of these defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases of the Company's shares during the Class Period.

118.    By virtue of the foregoing, Vertiv and the Officer Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5, promulgated thereunder.

## COUNT V

### For Violations of Section 20(a) of the Exchange Act
### Against the Officer Defendants and the Selling Shareholders

119.    Plaintiff repeats, incorporates, and realleges each and every allegation contained above as if fully set forth herein.

120.    The Officer Defendants and Selling Shareholders acted as controlling persons of Vertiv within the meaning of Section 20(a) of the Exchange Act.  By virtue of their high-level positions, participation in and/or awareness of the Company's operations, direct involvement in the day-to-day operations of the Company, and/or intimate knowledge of the Company's actual performance, and their power to control public statements about Vertiv, the Officer Defendants and Selling Shareholders had the power and ability to control the actions of Vertiv and its employees.  By reason of such conduct, the Officer Defendants are liable pursuant to Section 20(a) of the Exchange Act.

## PRAYER FOR RELIEF

121.    WHEREFORE, Plaintiff prays for judgment as follows:

(a)     Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

(b)    Awarding compensatory damages in favor of Plaintiff and other Class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)    Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including attorneys' fees and expert fees; and

(d)    Awarding such equitable/injunctive or other further relief as the Court may deem just and proper.

## JURY DEMAND

122.    Plaintiff demands a trial by jury.

DATED: May 3, 2022                        Respectfully submitted,

*/s/ Hannah Ross*
Hannah Ross
Avi Josefson
Scott R. Foglietta
**BERNSTEIN LITOWITZ BERGER**
  **& GROSSMANN LLP**
1251 Avenue of the Americas
New York, NY 10020
Telephone: (212) 554-1400
Facsimile: (212) 554-1444
hannah@blbglaw.com
avi@blbglaw.com
scott.foglietta@blbglaw.com

*Counsel for Plaintiff City of Riviera Beach*
*General Employees' Retirement System*

## CERTIFICATION PURSUANT TO
## THE FEDERAL SECURITIES LAWS

I, Betty Kendrick, on behalf of City of Riviera Beach General Employees' Retirement System ("Riviera Beach"), hereby certify, as to the claims asserted under the federal securities laws, that:

1.  I am the Chair of Riviera Beach. I have reviewed the complaint and authorize its filing by counsel.

2.  Riviera Beach did not purchase the securities that are the subject of this action at the direction of counsel or in order to participate in any action arising under the federal securities laws.

3.  Riviera Beach is willing to serve as a representative party on behalf of the Class, including providing testimony at deposition and trial, if necessary.

4.  Riviera Beach's transactions in the Vertiv Holdings Co securities that are the subject of this action are set forth in the chart attached hereto.

5.  Riviera Beach has served as a representative party on behalf of a class in the following action filed under the federal securities laws during the three years preceding the date of this Certification:

    *City of Riviera Beach General Employees Retirement System v.*
    *Royal Caribbean Cruises LTD,* No. 20-cv-24111 (S.D. Fla.)

6.  Riviera Beach will not accept any payment for serving as a representative party on behalf of the Class beyond Riviera Beach's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the Class, as ordered or approved by the Court.

I declare under penalty of perjury that the foregoing is true and correct. Executed this ___ day of April, 2022.

Betty Kendrick
Chair
*City of Riviera Beach General Employees'*
*Retirement System*

**City of Riviera Beach General Employees' Retirement System
Transactions in Vertiv Holdings Co**

| Transaction | Date | Shares | Price |
|---|---|---|---|
| Purchase | 03/25/2021 | 300 | 18.7143 |
| Purchase | 03/25/2021 | 600 | 18.7973 |
| Purchase | 03/25/2021 | 1,200 | 18.9848 |
| Purchase | 03/25/2021 | 300 | 18.9889 |
| Purchase | 03/25/2021 | 1,500 | 19.1345 |
| Purchase | 03/29/2021 | 2,023 | 19.3261 |
| Purchase | 03/29/2021 | 185 | 19.3288 |
| Purchase | 03/29/2021 | 518 | 19.3257 |
| Purchase | 03/29/2021 | 92 | 19.2606 |
| Purchase | 03/29/2021 | 419 | 19.2920 |
| Purchase | 03/29/2021 | 366 | 19.2585 |
| Purchase | 03/29/2021 | 1,206 | 19.2347 |
| Purchase | 03/29/2021 | 91 | 19.2283 |
| Purchase | 03/30/2021 | 68 | 19.3454 |
| Purchase | 03/30/2021 | 298 | 19.4086 |
| Purchase | 03/30/2021 | 195 | 19.6548 |
| Purchase | 03/30/2021 | 39 | 19.4650 |
| Purchase | 04/28/2021 | 266 | 22.9130 |
| Purchase | 04/28/2021 | 43 | 22.9885 |
| Purchase | 04/28/2021 | 234 | 22.9540 |
| Purchase | 04/28/2021 | 73 | 22.9590 |
| Purchase | 04/28/2021 | 44 | 22.9335 |
| Purchase | 04/28/2021 | 140 | 22.7436 |
| Purchase | 04/29/2021 | 492 | 23.1373 |
| Purchase | 04/29/2021 | 8 | 23.0850 |
| Purchase | 05/03/2021 | 99 | 22.8519 |
| Purchase | 05/03/2021 | 970 | 22.9156 |
| Purchase | 05/03/2021 | 115 | 22.8223 |
| Purchase | 05/03/2021 | 14 | 22.7450 |
| Purchase | 05/03/2021 | 100 | 22.7125 |
| Purchase | 05/03/2021 | 200 | 22.6657 |
| Purchase | 05/03/2021 | 160 | 22.9088 |
| Purchase | 05/03/2021 | 342 | 22.8056 |
| Purchase | 05/04/2021 | 235 | 22.5190 |
| Purchase | 05/04/2021 | 72 | 22.5757 |
| Purchase | 05/04/2021 | 247 | 22.6145 |
| Purchase | 05/04/2021 | 190 | 22.5436 |
| Purchase | 05/04/2021 | 191 | 22.5061 |
| Purchase | 05/04/2021 | 365 | 22.6376 |
| Purchase | 07/28/2021 | 172 | 27.3822 |

| | | | |
|---|---|---|---|
| Purchase | 07/28/2021 | 411 | 27.6735 |
| Purchase | 07/28/2021 | 317 | 27.7130 |
| Purchase | 08/10/2021 | 477 | 27.1023 |
| Purchase | 08/10/2021 | 123 | 27.1506 |
| Purchase | 08/11/2021 | 216 | 26.5684 |
| Purchase | 08/11/2021 | 26 | 26.5527 |
| Purchase | 08/11/2021 | 58 | 26.6383 |
| Purchase | 09/08/2021 | 521 | 26.4349 |
| Purchase | 09/08/2021 | 227 | 25.9950 |
| Purchase | 09/08/2021 | 109 | 25.9950 |
| Purchase | 09/08/2021 | 64 | 25.9553 |
| Purchase | 09/08/2021 | 79 | 26.4850 |
| Purchase | 09/13/2021 | 600 | 23.9714 |
| Purchase | 09/14/2021 | 27 | 23.6100 |
| Purchase | 09/14/2021 | 173 | 23.5899 |
| Purchase | 09/17/2021 | 120 | 23.9718 |
| Purchase | 09/17/2021 | 580 | 23.7633 |
| Purchase | 09/17/2021 | 453 | 23.7724 |
| Purchase | 09/17/2021 | 174 | 23.8450 |
| Purchase | 09/17/2021 | 173 | 23.8950 |
| Purchase | 09/20/2021 | 48 | 23.3277 |
| Purchase | 09/20/2021 | 19 | 23.4648 |
| Purchase | 09/20/2021 | 33 | 23.3500 |
| Purchase | 10/07/2021 | 56 | 23.3310 |
| Purchase | 10/07/2021 | 244 | 23.3273 |
| Purchase | 10/14/2021 | 45 | 22.2650 |
| Purchase | 10/14/2021 | 655 | 22.2783 |
| Purchase | 11/02/2021 | 4,000 | 25.0000 |
| Purchase | 11/12/2021 | 86 | 26.7350 |
| Purchase | 11/12/2021 | 129 | 26.7071 |
| Purchase | 11/12/2021 | 90 | 26.7350 |
| Purchase | 11/12/2021 | 95 | 26.7819 |
| Purchase | 12/06/2021 | 456 | 25.3199 |
| Purchase | 12/06/2021 | 144 | 24.7500 |
| Purchase | 12/14/2021 | 363 | 24.4754 |
| Purchase | 12/14/2021 | 35 | 24.3800 |
| Purchase | 12/14/2021 | 58 | 24.2000 |
| Purchase | 12/14/2021 | 44 | 24.2985 |
| Purchase | 01/12/2022 | 400 | 23.7728 |
| | | | |
| Sale | 07/15/2021 | (10) | 26.6150 |
| Sale | 07/15/2021 | (1,038) | 26.4425 |
| Sale | 07/15/2021 | (245) | 26.4200 |
| Sale | 07/15/2021 | (69) | 26.3981 |
| Sale | 07/15/2021 | (138) | 26.4534 |

| | | | |
|---|---|---|---|
| Sale | 09/29/2021 | (700) | 24.2927 |