UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CITY OF RIVIERA BEACH GENERAL EMPLOYEES' RETIREMENT SYSTEM, on behalf of itself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>VERTIV HOLDINGS CO, ROB JOHNSON, DAVID FALLON, JASON FORCIER, GARY NIEDERPRUEM, DAVID COTE, JOSEPH VAN DOKKUM, ROGER FRADIN, JACOB KOTZUBEI, MATTHEW LOUIE, EDWARD L. MONSER, STEVEN S. REINEMUND, ROBIN L. WASHINGTON, J.P. MORGAN SECURITIES LLC, GOLDMAN SACHS & CO. LLC, CITIGROUP GLOBAL MARKETS INC., VPE HOLDINGS, LLC, VERTIV JV HOLDINGS LLC, PE VERTIV HOLDINGS LLC, PLATINUM EQUITY, LLC, PLATINUM EQUITY INVESTMENT HOLDINGS, LLC, PLATINUM EQUITY INVESTMENT HOLDINGS MANAGER, LLC, PLATINUM EQUITY INVESTCO, L.P., PLATINUM EQUITY INVESTMENT HOLDINGS IC (CAYMAN), LLC, PLATINUM INVESTCO (CAYMAN), LLC, PLATINUM EQUITY INVESTMENT HOLDINGS III, LLC, PLATINUM EQUITY INVESTMENT HOLDINGS MANAGER III, LLC, and TOM GORES,<br><br>Defendants. | Case No. 1:22-cv-3572 |

**MEMORANDUM OF LAW IN SUPPORT OF EXCAVATORS UNION LOCAL 731 PENSION AND WELFARE FUNDS' MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF COUNSEL**

**TABLE OF CONTENTS**

I. INTRODUCTION ............................................................................................................. 1

II. BACKGROUND ............................................................................................................... 2

III. ARGUMENT ..................................................................................................................... 5

    A. Movant Should Be Appointed as Lead Plaintiff. ................................................... 5

        1. Movant Satisfies the Procedural Requirements for Appointment as Lead Plaintiff. ........................................................................................................ 5

        2. Movant is Presumptively the Most Adequate Plaintiff. ................................ 6

        3. Movant Otherwise Satisfies the Requirements of Rule 23 ............................ 9

    B. The Court Should Approve Local 731's Choice of Counsel ............................... 11

V. CONCLUSION ................................................................................................................ 12

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Albert Fadem Tr. v. Citigroup Inc.*,
  239 F. Supp. 2d 344 (S.D.N.Y. 2002) ................................................................................. 14

*In re Braskem S.A. Sec. Litig.*,
  No. 15-CV-5132, 2015 WL 5244735 (S.D.N.Y. Sept. 8, 2015) .......................................... 16

*Chahal v. Credit Suisse Grp. AG*,
  No. 18-CV-02268, 2018 WL 3093965 (S.D.N.Y. June 21, 2018) ..................................... 16

*Chisholm v. TranSouth Fin. Corp.*,
  184 F.R.D. 556 (E.D. Va. 1999) ......................................................................................... 15

*In re Crayfish Co. Sec. Litig.*,
  No. 00-CV-6766, 2002 U.S. Dist. LEXIS 10134 (S.D.N.Y. June 6, 2002) ........................ 14

*In re Donnkenny Inc. Sec. Litig.*,
  171 F.R.D. 156 (S.D.N.Y. 1997) ........................................................................................ 13

*In re Elan Corp. Sec. Litig.*,
  No. 02-CV-865, 2002 U.S. Dist. LEXIS 23162 (S.D.N.Y. Dec. 3, 2002) .......................... 14

*In re eSpeed, Inc. Sec. Litig.*,
  232 F.R.D. 95 (S.D.N.Y. 2005) .......................................................................................... 12

*Fields v. Biomatrix, Inc.*,
  198 F.R.D. 451 (D.N.J. 2000) ............................................................................................. 14

*Jonathan Tan v. NIO Inc.*,
  No. 19-CV-1424, 2020 WL 1031489 (E.D.N.Y. Mar. 3, 2020) ......................................... 13

*Lang v. Tower Grp. Int'l, Ltd.*,
  No. 13-CV-5852, 2014 WL 12779212 (S.D.N.Y. June 17, 2014) ..................................... 12

*In re Millennial Media, Inc. Sec. Litig.*,
  87 F. Supp. 3d 563 (S.D.N.Y. 2015) .................................................................................. 12

*Mustafin v. GreenSky, Inc.*,
  No. 18-CV-11071, 2019 WL 1428594 (S.D.N.Y. Mar. 29, 2019) ..................................... 16

*Nakamura v. BRF S.A.*,
  No. 18-CV-2213, 2018 WL 3217412 (S.D.N.Y. July 2, 2018) .......................................... 13

*In re Olsten Corp. Sec. Litig.*,
    3 F. Supp. 2d 286 (E.D.N.Y. 1998) ..................................................................................... 14

*In re Razorfish, Inc. Sec. Litig.*,
    143 F. Supp. 2d 304 (S.D.N.Y. 2001) .................................................................................. 13

*Sallustro v. CannaVest Corp.*,
    93 F. Supp. 3d 265 (S.D.N.Y. 2015) .................................................................................... 12

*Topping v. Deloitte Touche Tohmatsu CPA, Ltd.*,
    95 F. Supp. 3d 607 (S.D.N.Y. 2015) ............................................................................... 12, 16

*Weltz v. Lee*,
    199 F.R.D 129 (S.D.N.Y. 2001) ..................................................................................... 14, 15

**Statutes, Regulations, and Rules**

15 U.S.C. § 78
    § 78u-4(a)(1) ........................................................................................................................ 10
    § 78u-4(a)(3) ........................................................................................................................ 11
    § 78u-4(a)(3)(A)(i) ............................................................................................................... 10
    § 78u-4(a)(3)(B)(i) ............................................................................................................... 11
    § 78u-4(a)(3)(B)(iii)(I) ......................................................................................................... 11
    § 78u-4(a)(3)(B)(iii)(I)(bb) .............................................................................................. 6, 12
    § 78u-4(a)(3)(B)(iii)(I)(cc) ................................................................................................... 14
    § 78u-4(a)(3)(B)(iii)(II) ........................................................................................................ 12
    § 78u-4(a)(3)(B)(iii)(II)(aa) .................................................................................................. 16
    § 78u-4(a)(3)(B)(v) ............................................................................................................... 16

Federal Rules of Civil Procedure Rule 23 ........................................................................ 6, 11, 14, 15
    Rule 23(a) ............................................................................................................................. 14
    Rule 23(a)(3) ................................................................................................................... 14, 16
    Rule 23(a)(4) ................................................................................................................... 15, 16

Securities Act of 1933 .................................................................................................................... 6

Securities Exchange Act of 1934 ............................................................................................. 6, 10

Private Securities Litigation Reform Act of 1995 (PSLRA) ................................................. *passim*

**Other Authorities**

H.R. Rep. No. 104-369 (1995) ..................................................................................................... 15

**I.      INTRODUCTION**

Excavators Union Local 731 Pension and Welfare Funds ("Local 731" or "Movant") respectfully submits this memorandum of law in support of its motion for appointment as lead plaintiff pursuant to the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), 15 U.S.C. § 78u-4(a)(3)(B), and approval of its selection of Cohen Milstein Sellers & Toll PLLC ("Cohen Milstein") as Lead Counsel for the class.

The above-captioned matter (together, the "Action") is a securities class action brought pursuant to Sections 11, 12(a)(2), and 15 of the Securities Act of 1933 (the "Securities Act"), and Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5, promulgated thereunder, against Vertiv Holdings Co ("Vertiv" or the "Company") and certain of its officers (collectively, "Defendants"). The Action is brought on behalf of a proposed class of all persons and entities who purchased or otherwise acquired Vertiv stock between February 24, 2021 and February 23, 2022, inclusive (the "Class Period").

The PSRLA provides that the person or persons who files a motion within the prescribed PSLRA deadlines, possesses the largest financial interest in the case, and otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure should be appointed as lead plaintiff.

Under these standards, Movant should be appointed. The instant motion is timely, as it is filed within 60 days of the notice published pursuant to the PSLRA. Movant suffered combined losses of approximately $823,015.05 as a result of the alleged misconduct, and is unaware at this time of any other movant with a greater loss. Movant otherwise satisfies Rule 23. Thus, under Section 21D of the Exchange Act, Movant is presumptively the "most adequate plaintiff" and should be appointed as lead plaintiff because it has "the largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb). Additionally, Movant's selection of Cohen

Milstein Sellers & Toll PLLC should be approved. Cohen Milstein is highly qualified to prosecute securities class actions such as this one and have done so many times before.

## II.     BACKGROUND

Vertiv is a data center solutions company that designs, manufactures, and services digital infrastructure technology to power, cool, deploy, secure, and maintain electronics that process, store, and transmit data. Vertiv is headquartered in Columbus, Ohio and incorporated in Delaware. Vertiv's stock trades on the New York Stock Exchange under the ticker symbol "VRT."

Vertiv offers software solutions as well as a range of hardware solutions to its customers throughout the global data center industry. In connection with its hardware business, Vertiv engages in manufacturing and global supply chain logistics that are susceptible to cost fluctuation deriving from the inflation of material, manufacturing, and supply chain pricing.

During 2021, Vertiv, like many companies experienced supply chain issues as a result of the Covid-19 pandemic as well as rising inflation. However, throughout the Class Period, Vertiv repeatedly touted its robust pricing capabilities, stating that "procurement and pricing initiatives drove contribution margin improvement" which purportedly enabled the Company to improve its operating margins even in the face of constrained supply chains. Even as the Company felt increasing inflationary and supply chain pressures, it continued to assure investors that its "pricing initiatives have continued to yield favorable results."

On February 24, 2021, the Company issued a press release announcing its fourth quarter and full year 2020 results. In the press release, which the Company filed with the SEC on Form 8-K, Vertiv reported fourth quarter net income of $75 million and adjusted EBITDA of $187 million, with adjusted EBITDA margins increasing 160 basis points to 14.3% year over year.

Later that day, Vertiv held a conference call with analysts and investors to discuss the Company's 2020 results. During the call, Defendant Johnson attributed the Company's financial

results and margin expansion to "very good performance in supply chain" and "pricing initiatives" which "continued to yield favorable results." Johnson further touted its "pricing initiatives" stating that the "foundation we've established and the trajectory that we are on, gives me confidence in our ability to achieve the expansion plans we laid out a year ago."

On April 28, 2021, Vertiv announced its first quarter 2021 financial results, including: net sales growth; increased orders; operating profit of $80 million; adjusted operating profit of $112 million; operating profit margin of 7.3%; an adjusted operating profit margin of 10.2%; earnings per share of $0.09; and and adjusted earnings per share of $0.21, exceeding guidance. Citing its strong first quarter performance, Vertiv raised full-year 2021 net sales, operating profit guidance, and adjusted EPS guidance.

During its earnings call held the same day, however, Vertiv explained that "the market is facing supply chain and commodity cost challenges, and Vertiv is not exempt." Nevertheless, Vertiv assured investors that it was "aggressively working to secure supply . . . while developing and executing strategies to share the cost with our customers where possible." The Company stated that these issues presented only a "short term headwind" that presented a strategic opportunity to "get additional price." Vertiv further noted that the guidance "includes the expected negative net impact in the remainder of the year of higher commodity and freight costs."

On July 28, 2021, Vertiv announced second quarter 2021 financial results, announcing increased sales by 25%, increased orders by 24%, increased earnings per share, robust customer demand, and increased operating profit. Indeed, Vertiv's adjusted operating profit was $134 million, which was 30% higher than second quarter 2020 results. Accordingly, the Company again raised its 2021 operating profit guidance. Vertiv continued to acknowledge "material inflation and supply-chain challenges," but stated that it had "implemented additional pricing actions and fixed

cost reductions to help offset these challenges." During its earnings call held the same day, Vertiv explained that its pricing solutions would remove any inflationary headwinds.

On October 27, 2021, Vertiv announced third quarter 2021 financial results, reporting net sales growth, increased EPS, and increased operating profit. Indeed, the Company stated that its "[r]obust end-market demand continued with double-digit order growth and record backlog." Although supply chain issues continued, Vertiv explained that it was continuing its "pricing response" and that "[c]ost containment actions have been accelerated heading into the fourth quarter to mitigate impacts from increased supply chain disruptions." According to Vertiv, although it still faced supply chain headwinds, "demand remains strong, and we anticipate net pricing and inflation actions will provide a tailwind for full year 2022."

Contrary to the Company's representations, however, Vertiv's "pricing initiatives" were ineffective and the Company's sales force was not capable of driving higher pricing and passing costs on to customers. Instead, the sales team had resorted to discounting in order to drive sales and build the Company's backlog, which resulted in lower margins and profitability.

On November 4, 2021, Vertiv closed its secondary public offering of Class A common stock (the "SPO"). VPE Holdings, an affiliate of Platinum Equity, LLC, sold 20 million shares of Vertiv Class A common stock at $24.83 per share, reaping over $496 million in gross proceeds.

On February 23, 2022, Vertiv announced fourth quarter 2021 financial results. The Company's paltry $0.06 earnings per share missed analyst expectations of $0.28. Vertiv's Chief Executive Officer ("CEO") explained that management "consistently underestimated inflation and supply chain constraints for both timing and degree, with dictated a tepid 2021 pricing response." During Vertiv's earnings call, the CEO further admitted:

> In short, we screwed up and some of you undoubtedly are wondering
> how we could get so surprised. We significantly underestimated the

4

>magnitude of the material and freight inflation in the fourth quarter forecast mostly in America, by approximately $36 million.
>
>This underestimation cost also contributed to our underpricing in the market in 2021. So it was a huge deal not only for costs, but also price.

Vertiv shares fell from $19.57 on February 22, 2022, to $12.38 on February 23, 2022, representing a decline of more than 36 percent.

### III.    ARGUMENT

#### A.    Movant Should Be Appointed as Lead Plaintiff.

As discussed below, Movant satisfies each of the requirements of the PSLRA and is therefore qualified for appointment as lead plaintiff. Additionally, Movant seeks appointment of Cohen Milstein as lead counsel.

##### 1.    Movant Satisfies the Procedural Requirements for Appointment as Lead Plaintiff.

The Exchange Act, 15 U.S.C. § 78u-4, establishes a procedure for the appointment of a lead plaintiff in "each private action arising under the [Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(1). The plaintiff who files the initial action must publish a notice to the class within 20 days of filing the action, informing class members of their right to file a motion for appointment as lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(A)(i). The first such notice here was published on March 24, 2022. *See* Declaration of Christopher Lometti in Support of the Motion of Excavators Union Local 731 Pension and Welfare Funds for Appointment as Lead Plaintiff and Approval of Selection of Counsel ("Lometti Decl."), Ex. A.

The PSLRA further provides that within 60 days after the publication of the notice of pendency, or as soon as practicable after the actions have been consolidated, the Court shall consider any motion made by a class member and "shall appoint as lead plaintiff the member or

members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members." 15 U.S.C. § 78u-4(a)(3)(B)(i).

The 60-day time period provided by the PSLRA in which applications for appointment as lead plaintiff must be filed expires on May 23, 2022. Movant has moved within the statutory 60-day time period. The motion contains the required certifications setting forth, inter alia, Movant's purchases of Vertiv common stock, indicating that Movant has reviewed the relevant complaint, and is willing to serve as a representative party on behalf of the class. *See* Lometti Decl., Ex. B.

In addition, Movant has selected and retained competent and experienced counsel, as set forth in counsel's resume. *See* Lometti Decl., Ex. D. As demonstrated in its resume, Cohen Milstein has substantial experience in successfully prosecuting federal securities law claims.

### 2. Movant is Presumptively the Most Adequate Plaintiff.

The PSLRA sets forth procedures for the appointment of a lead plaintiff in class actions brought under the federal securities laws. 15 U.S.C. § 78u-4(a)(3). The PSLRA provides that the Court:

> shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members (hereafter in this paragraph referred to as the "most adequate plaintiff") in accordance with this subparagraph.

15 U.S.C. § 78u-4(a)(3)(B)(i).

The Court is guided by a presumption that the most adequate plaintiff is the person or group of persons who (a) filed the Complaint or made a motion to serve as lead plaintiff, (b) has the largest financial interest in the relief sought by the class, and (c) otherwise satisfies the requirements of Federal Rule of Civil Procedure 23 and 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). This presumption may be rebutted by proof that the presumptive most adequate plaintiff "will not fairly

and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

Local 731 is qualified for appointment as Lead Plaintiff. Its members collectively suffered losses of approximately $823,015.05 from their purchases of Vertiv securities during the Class Period under a LIFO analysis, as a result of Defendants' misrepresentations. *See* Lometti Decl. Ex. C. Movant is presently unaware of any other movant with a larger financial interest in the relief sought by the class, and is therefore the most adequate plaintiff and entitled to appointment as Lead Plaintiff. *See Sallustro v. CannaVest Corp.*, 93 F. Supp. 3d 265, 277 (S.D.N.Y. 2015) (appointing as lead plaintiff the movant with the largest potential recoverable loss); *see also Lang v. Tower Grp. Int'l, Ltd.*, No. 13-CV-5852 (AT), 2014 WL 12779212, at *3 (S.D.N.Y. June 17, 2014) (appointing group of plaintiffs with largest losses).

Movant's large financial interest in this litigation shows that it is prepared to protect the interests of the Class. *See Topping v. Deloitte Touche Tohmatsu CPA, Ltd.*, 95 F. Supp. 3d 607, 623 (S.D.N.Y. 2015) (observing that lead plaintiff movant's substantial losses suggest its "strong interest in advocating on behalf of the Class"). Because Movant possesses a significant interest in the outcome of this litigation, it is presumed to be the "most adequate" plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb). Further, Movant is both qualified to represent the Class and willing to serve as a representative party.

Moreover, as set forth in its certification, attached as Exhibit B to the Lometti Decl., Local 731 is willing to actively participate in the leadership of this litigation. Movant is a sophisticated institutional investor, which is "the type of investor Congress prefers as lead plaintiffs" in securities class actions. *In re Millennial Media, Inc. Sec. Litig.*, 87 F. Supp. 3d 563, 570 (S.D.N.Y. 2015); *see also In re eSpeed, Inc. Sec. Litig.*, 232 F.R.D. 95, 99 (S.D.N.Y. 2005) ("The fact that

the PSLRA was designed to favor institutional investors should be taken into account when determining what constitutes a reasonable group of 'members.'"). Indeed, Movant is the type of "single sophisticated entity" that best exemplifies the "client-driven litigation" contemplated by the PSLRA. *In re Razorfish, Inc. Sec. Litig.*, 143 F. Supp. 2d 304, 308-09 (S.D.N.Y. 2001) (holding that because the proposed lead plaintiff group had "no independent existence and its composite members have no prior relationship, there is nothing to suggest that they will collectively ride herd on counsel anywhere as well as could a single sophisticated entity"); *see also, e.g.*, *Jonathan Tan v. NIO Inc.*, No. 19-CV-1424, 2020 WL 1031489, at *4-5 (E.D.N.Y. Mar. 3, 2020) (declining to aggregate the losses of a proposed lead plaintiff group on the basis that "[w]hile the group appears to consist of reasonably sophisticated and experienced investors, the declaration is entirely silent as to any pre-litigation relationship that may have existed among them," and instead appointing an individual lead plaintiff); *Nakamura v. BRF S.A.*, No. 18-CV-2213, 2018 WL 3217412, at *3 (S.D.N.Y. July 2, 2018) (holding that the proposed lead plaintiff group "ha[d] not satisfied its burden of showing that [it] is appropriate to aggregate the two separate holding companies as a single lead plaintiff" and instead appointing a single institutional investor as lead plaintiff); *In re Donnkenny Inc. Sec. Litig.*, 171 F.R.D. 156, 157 (S.D.N.Y. 1997) (stating that "[t]o allow an aggregation of unrelated plaintiffs to serve as lead plaintiffs defeats the purpose of choosing a lead plaintiff" and appointing individual entity as lead plaintiff after denying the motion of a larger group).

Finally, Movant has selected counsel highly experienced in prosecuting securities class actions such as this one. Accordingly, Movant satisfies the requirements for appointment as Lead Plaintiff under the PSLRA and its motion should be granted.

8

### 3. Movant Otherwise Satisfies the Requirements of Rule 23.

In addition to requiring that the lead plaintiff have the largest financial interest, the PSLRA requires that the lead plaintiff must "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc). *See also In re Elan Corp. Sec. Litig.*, No. 02-CV-865 (WK) (FM), 2002 U.S. Dist. LEXIS 23162, at *7 (S.D.N.Y. Dec. 3, 2002); *Albert Fadem Tr. v. Citigroup Inc.*, 239 F. Supp. 2d 344, 347 (S.D.N.Y. 2002).

Rule 23(a) requires that (1) the class be so numerous that joinder of all members is impracticable; (2) there be questions of law or fact common to the class; (3) such claims be typical of those of the class; and (4) the representatives fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). Typicality and adequacy of representation are the only provisions relevant to the determination of lead plaintiff under the PSLRA. *In re Crayfish Co. Sec. Litig.*, No. 00-CV-6766 (DAB), 2002 U.S. Dist. LEXIS 10134, at *14 (S.D.N.Y. June 6, 2002) (citing *In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286, 296 (E.D.N.Y. 1998) and *Weltz v. Lee*, 199 F.R.D 129, 133 (S.D.N.Y. 2001)).

The typicality requirement of Fed. R. Civ. P. 23(a)(3) is satisfied where "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). A "claim will meet the typicality requirement if 'each class member's claim arises from the same course of conduct, and each class member makes similar legal arguments to prove the defendants' liability.'" *Olsten*, 3 F. Supp. 2d at 296 (quoting *In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 291 (2d Cir. 1992)); *see also Fields v. Biomatrix, Inc.*, 198 F.R.D. 451, 456 (D.N.J. 2000). The typicality standard is met even where minor distinctions exist. *Id.* As one court has noted: "The premise of the typicality requirement is simply stated: as goes the claim of the named plaintiff, so go the claims of the class. Complete identification between the claims

9

constituting each individual action is not required." *Chisholm v. TranSouth Fin. Corp.*, 184 F.R.D. 556, 563-64 (E.D. Va. 1999) (internal citation omitted).

Here, Movant seeks the same relief and advances the same legal theories as all class members. Because the claims asserted by Movant are based on the same legal theories and arise "from the same event or practice or course of conduct that gives rise to the claims of other class members," Movant meets the requirements of the typicality requirement of Rule 23.

The "adequacy" requirement of Rule 23(a)(4) is satisfied when the proposed class representative "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Representation is adequate when "(1) class counsel is qualified, experienced and generally able to conduct the litigation; (2) the class members [d]o not have interests that are antagonistic to one another; and (3) the class has a sufficient interest in the outcome of the case to ensure vigorous adequacy." *Weltz*, 199 F.R.D. at 133 (citing *Olsten*, 3 F. Supp. 2d at 296).

Here, Movant is an adequate representative for the Class. First, as noted above, it is a sophisticated institutional investor, which is preferred under the PSLRA. *See* H.R. Rep. No. 104-369, at 34 (1995) (Conf.Rep.) ("The Conference Committee believes that increasing the role of institutional investors . . . will ultimately benefit shareholders and assist courts by improving the quality of representation in securities class actions.").

Second, Movant does not have interests adverse to those of the Class and purchased Vertiv securities during the Class Period. Like other putative class members, Movant suffered losses in the form of diminution of the value of its Vertiv securities upon disclosure of the fraud. Furthermore, as a result of Movant's significant financial stake in this action, it will vigorously advocate on behalf of the class. Finally, Movant has retained counsel highly experienced in

prosecuting securities class actions vigorously and efficiently, *see* Lometti Decl., Ex. D, and has timely submitted its choice to the Court for approval pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v).

All of these factors demonstrate that Movant's claims are typical of the claims of the class within the meaning of Rule 23(a)(3), and that Movant will fairly and adequately represent the interests of the class under Rule 23(a)(4). Movant should therefore be appointed lead plaintiff.

### B. The Court Should Approve Local 731's Choice of Counsel.

The PSLRA expressly provides that "[t]he most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. § 78u-4(a)(3)(B)(v). The Court should not disturb a proposed lead plaintiff's choice unless "necessary to protect the interests of the plaintiff class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa).

Here, Local 731 has selected Cohen Milstein to serve as Lead Counsel for the class. Local 731's selection of counsel should be approved. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v). As detailed in its firm resume, Cohen Milstein has extensive expertise and experience in the field of securities litigation and has successfully prosecuted numerous securities fraud class actions across the country and has obtained excellent recoveries on behalf of defrauded investors. Lometti Decl. Ex. D; *see also Mustafin v. GreenSky, Inc.*, No. 18-CV-11071 (PAE), 2019 WL 1428594, at *6 (S.D.N.Y. Mar. 29, 2019) (approving Cohen Milstein as co-lead counsel and noting the firm's "experience litigating securities class actions"); *Chahal v. Credit Suisse Grp. AG*, No. 18-CV-02268, 2018 WL 3093965, at *7 (S.D.N.Y. June 21, 2018) (approving the selection of Cohen Milstein as co-lead counsel and noting that the firm is "highly experienced in prosecuting securities class actions"); *In re Braskem S.A. Sec. Litig.*, No. 15-CV-5132 (PAE), 2015 WL 5244735, at *6 (S.D.N.Y. Sept. 8, 2015) (approving Cohen Milstein to serve as lead counsel on the basis of the firm's "experience litigating securities class actions"); *Topping*, 95 F. Supp. 3d at 624 (selecting

Cohen Milstein as lead counsel because it "has successfully prosecuted numerous securities fraud class actions").

Thus, the Court can be assured that class will receive the highest caliber of legal representation available in the event this Motion is granted. Accordingly, Local 731's selection of counsel should be approved.

## V.     CONCLUSION

For the foregoing reasons, Local 731 respectfully requests that the Court enter an Order appointing Local 731 as lead plaintiff and approving Local 731's selection of Cohen Milstein as lead counsel for the class, and grant such other relief as the Court may deem just and proper.

Dated: May 23, 2022

By: *Christopher Lometti*
**COHEN MILSTEIN SELLERS & TOLL PLLC**
Christopher Lometti (CL-9124)
Jessica (Ji Eun) Kim (5326129)
88 Pine Street, 14th Floor
New York, NY 10005
Telephone: (212) 838-7797
Facsimile: (212) 838-7745
Email: clometti@cohenmilstein.com
Email: jekim@cohenmilstein.com

Steven J. Toll (*pro hac vice* forthcoming)
1100 New York Avenue, N.W. / Fifth Floor
Washington, D.C. 20005
Telephone: (202) 408-4600
Facsimile: (202) 408-4699
Email: stoll@cohenmilstein.com

*Counsel for Excavators Union Local 731 Pension and Welfare Funds and Proposed Lead Counsel for the Class*

12

# **CERTIFICATE OF SERVICE**

I certify that on May 23, 2022, I caused a true and correct copy of the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system. Notice of this filing will be sent to counsel of record by operation of the Court's electronic filing system.

*Christopher Lometti*
Christopher Lometti