**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| *In re Vertiv Holdings Co Securities Litigation* | No. 1:22-cv-03572-GHW-OTW<br><br>**ORAL ARGUMENT REQUESTED** |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS'**
**MOTION TO DISMISS THE AMENDED CONSOLIDATED COMPLAINT**

**TABLE OF CONTENTS**

ARGUMENT..................................................................................................................2

I.      The Section 10(b) Claims Fail Because Plaintiffs Do Not Allege Actionable
        Misstatements or Omissions ................................................................................2

        A.      Statements That Vertiv Was Implementing Pricing Actions Are Not
                Actionable.................................................................................................2

        B.      Statements About Actions Pre- and Post-Class Period Are Not Actionable.........11

        C.      Many of the Statements Are Non-Actionable Opinions......................................12

        D.      Many of the Statements Are Non-Actionable Forward-Looking Statements .......13

        E.      Many of the Statements Are Non-Actionable Puffery .........................................16

II.     Plaintiffs Fail to Allege a Strong Inference of Scienter......................................16

        A.      Plaintiffs' Motive Theory Is Unsupported and Illogical......................................17

        B.      Plaintiffs' Allegations of Conscious Misbehavior or Recklessness Fail...............18

III.    Plaintiffs Do Not Allege Violations of Sections 11 and 12(a)(2).....................................21

CONCLUSION.............................................................................................................22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Allianz Global Investors U.S. LLC Alpha Series Litigation*,
2021 WL 4481215 (S.D.N.Y. Sept. 30, 2021)............................................................................5

*In re Ariba, Inc. Sec. Litig.*,
2005 WL 608278 (N.D. Cal. Mar. 16, 2005)............................................................................20

*In re Blue Apron Holdings, Inc. Sec. Litig.*,
2020 WL 1950783 (E.D.N.Y. Apr. 22, 2020) ..........................................................................15

*City of Omaha Pol. & Fire Ret. Sys.* v. *Evoqua Water Techs. Corp.*,
450 F. Supp. 3d 379 (S.D.N.Y. 2020) ......................................................................................21

*City of Sterling Heights Police & Fire Ret. Sys.* v. *Vodafone Grp. Pub. Co.*,
655 F. Supp. 2d 262 (S.D.N.Y. 2009) ........................................................................................5

*ECA & Local 134 IBEW Joint Pens. Trust of Chicago* v. *J.P. Morgan Chase Co.*,
553 F.3d 187 (2d Cir. 2009).........................................................................................16, 17, 18

*In re Fairway Grp. Holdings Corp. Sec. Litig.*,
2015 WL 4931357 (S.D.N.Y. Aug. 19), *report and recommendation adopted*,
2015 WL 5255469 (Sept. 9, 2015)......................................................................................15, 16

*Firemen's Ret. Sys. of St. Louis* v. *Telos Corp.*,
2023 WL 1512207 (E.D. Va. Feb. 1, 2023)..............................................................................20

*Frankfurt-Tr. Inv. Luxemburg AG* v. *United Techs. Corp.*,
336 F. Supp. 3d 196 (S.D.N.Y. 2018), *aff'd*, 779 F. App'x 69 (2d Cir. 2019).......................20

*Friedman* v. *Endo Int'l PLC*,
2018 WL 446189 (S.D.N.Y. Jan. 16, 2018) ............................................................................16

*In re General Electric Co. Sec. Litig*,
857 F. Supp. 2d 367 (S.D.N.Y. 2012) ......................................................................................19

*Gissin* v. *Endres*,
739 F. Supp. 2d 488 (S.D.N.Y. 2010) ......................................................................................14

*Glaser* v. *The9, Ltd.*, 772 F. Supp. 2d 573 (S.D.N.Y. 2011) ..........................................................19

*Gomez* v. *Credit Suisse AG*,
2023 WL 2744415 (S.D.N.Y. Mar. 31, 2023) .........................................................................22

*Greco* v. *Qudian Inc.*,
  2022 WL 4226022 (S.D.N.Y. Sept. 13, 2022)..................................................................17

*In re Home Point Cap. Inc. Sec. Litig.*,
  2022 WL 18932069 (E.D. Mich. Oct. 5, 2022) ...............................................................22

*Iowa Pub. Emps. Ret. Sys.* v. *MF Global, Ltd.*,
  620 F.3d 137 (2d Cir. 2010)............................................................................................14

*Jackson* v. *Abernathy*,
  960 F.3d 94 (2d Cir. 2020)...............................................................................................21

*Loc. No. 38 Int'l Bhd. of Elec. Workers Pension Fund* v. *Am. Exp. Co.*,
  724 F. Supp. 2d 447 (S.D.N.Y. 2010) .............................................................................17

*In re Lululemon Sec. Litig.*,
  14 F. Supp. 3d 553 (S.D.N.Y. 2014), *aff'd*, 604 F. App'x 62 (2d Cir. 2015)...........................6

*Martin* v. *Quartermain*,
  732 F. App'x 37 (2d Cir. 2018) .......................................................................................12

*In re NIO, Inc. Sec. Litig.*,
  2021 WL 3566300 (E.D.N.Y. Aug. 12, 2021)..................................................................6

*Okla. L. Enf't Ret. Sys.* v. *Papa John's Int'l, Inc.*,
  517 F. Supp. 3d 196 (S.D.N.Y. 2021) .........................................................................15, 22

*Omnicare, Inc.* v. *Laborers Dist. Council Const. Industry Pension Fund*,
  575 U.S. 175 (2015).......................................................................................................12, 13

*Patriot Expl., LLC* v. *SandRidge Energy, Inc.*,
  951 F. Supp. 2d 331 (D. Conn. 2013)..............................................................................15

*Plumber & Steamfitters Loc. 773 Pension Fund* v. *Danske Bank A/S*,
  11 F.4th 90 (2d Cir. 2021) ...............................................................................................9

*In re PXRE Grp., Ltd. Sec. Litig.*,
  600 F. Supp. 2d 510 (S.D.N.Y.), *aff'd*, 357 F. App'x 393 (2d Cir. 2009)....................17, 18

*In re Salix Pharms.*,
  2016 WL 1629341 (S.D.N.Y. Apr. 22, 2016)...................................................................14

*In re Tufin Software Technologies Ltd. Securities Litigation*,
  2022 WL 596861 (S.D.N.Y. Feb. 25, 2022)....................................................................6

*Turner* v. *MagicJack VocalTec, Ltd.*,
  2014 WL 406917 (S.D.N.Y. Feb. 3, 2014)......................................................................17

iii

*In re Turquoise Hill Res. Ltd. Sec. Litig,*
   2022 WL 4085677 (S.D.N.Y. Sept. 2, 2022)..............................................................12

*In re Vale S.A. Sec. Litig.,*
   2017 WL 1102666 (S.D.N.Y. Mar. 23, 2017) ............................................................15

*In re Wachovia Equity Sec. Litig.,*
   753 F. Supp. 2d 326 (S.D.N.Y. 2011) ...............................................................17, 21

*In re Wells Fargo & Co. Sec. Litig.,*
   2021 WL 4482102 (S.D.N.Y. Sept. 30, 2021)..........................................................15

*Wochos* v. *Tesla, Inc.,*
   985 F.3d 1180 (9th Cir. 2021) ..................................................................................13

*Yourish* v. *Cal. Amplifier,*
   191 F.3d 983 (9th Cir. 1999) ......................................................................................7

**Statutes**

15 U.S.C. § 77k...............................................................................................................21

15 U.S.C. § 77l(a)(2)........................................................................................................21

15 U.S.C. § 78j(b) .......................................................................................................2, 18

**Other Authorities**

Fed. R. Civ. P. 9(b) .........................................................................................................21

In their Opposition, Plaintiffs advance a false narrative that Vertiv promised to offset all inflation in 2021—no matter what. But Vertiv did not say that. To the contrary, Vertiv always disclosed it would *not* be able to pass along all expected inflation; and as costs increased, Vertiv disclosed that pricing initiatives would offset less and less inflation. Vertiv thus warned in early 2021 that it expected to offset only $15 million of a predicted full-year inflation impact of $20 million. As the year progressed, although Vertiv took actions to achieve $53 million in additional price—***more than 3x*** its initial forecast—full-year inflation surged to $188 million, more than ***9x*** the initial forecast, with ***$88 million in Q4 alone***. By fall 2021, when Plaintiffs argue Vertiv was promising to fully offset "potentially worse" inflation, Vertiv was actually disclosing that it would offset ***only 36%*** of 2021 inflation. Plaintiffs' case relies on assurances that were never given.

**Exchange Act Claims.** Plaintiffs argue that Vertiv misrepresented taking pricing actions in 2021, an argument that makes no sense in light of the unprecedented pricing they concede Vertiv actually did obtain in 2021. In support, Plaintiffs misquote Defendants' statements and stitch together snippets of statements from different time periods stripped of context. While Plaintiffs cite anonymous FEs to echo their conclusions, they do not counter Defendants' showing that the FEs were not in a position to allege facts about Vertiv's pricing actions in 2021. Plaintiffs also rely on so-called "admissions" post-dating the Class Period, but the statements read in full are (i) consistent with the challenged statements and (ii) hindsight-based "learnings." That is not fraud. The Exchange Act claims further fail because many alleged misstatements are non-actionable opinions, forward-looking, and puffery. Although Plaintiffs strain to characterize statements opining on Vertiv's ability to offset future inflation as statements of fact, the only embedded fact is that Vertiv took pricing actions, which Plaintiffs concede occurred and thus cannot be false.

The Exchange Act claims independently must be dismissed because Plaintiffs do not allege

1

a strong inference of scienter.  They have no answer to the fact that Officer Defendants sold no shares and exercised no options when Vertiv's stock price was allegedly inflated.  Plaintiffs' motive allegations are limited to the unsupported conspiracy theory that Officer Defendants prioritized a minority investor selling down its stake over their own interests.  And in invoking a consciousness or recklessness theory—a higher bar absent motive—they cannot identify any non-public information known by Officer Defendants that contradicts their statements.  Plaintiffs instead rely on post-Class Period statements that do not contradict the speakers' earlier statements, but (unsurprisingly) accept responsibility for a guidance miss.  Again, that is not fraud.

**Securities Act Claims.**  Contrary to Plaintiffs' assertion, the Securities Act claims are subject to the same heightened pleading standard as their mirror-image Exchange Act claims.  But under any standard, the claims must be dismissed.  Plaintiffs contend that a risk factor omitted that contracts in Vertiv's backlog locked it into prices despite increasing costs, but that purportedly omitted fact *was* expressly disclosed in the *same* document.  Plaintiffs also contend that a second risk factor was false because the risk that Vertiv's backlog would not yield profits had materialized, but they concede Vertiv reported contemporaneous profits, and, in any event, the securities laws do not require issuers to predict precisely how disclosed risks will manifest in any given quarter.

**ARGUMENT[1]**

**I.**   **The Section 10(b) Claims Fail Because Plaintiffs Do Not Allege Actionable Misstatements or Omissions**

   **A.  Statements That Vertiv Was Implementing Pricing Actions Are Not Actionable**

   ***Plaintiffs Cannot Plead Around Vertiv's Undisputed Pricing Increase.***   Plaintiffs'

---

[1] Capitalized terms are ascribed the meaning in the Motion to Dismiss.  Citations to "Mot." are to Defendants' Memorandum of Law in Support of their Motion to Dismiss.  Citations to "Ex." are to the January 20, 2023 Declaration of Audra J. Soloway in Support of the Motion to Dismiss.  Citations to "Opp." are to Lead Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Dismiss.  Citations to "Supp. Ex." are to the May 15, 2023 Declaration of Audra J. Soloway in Support of the Motion to Dismiss.  All emphases are added unless otherwise stated.

2

challenge to statements about Vertiv's pricing actions in 2021 fails because the AC lacks any particularized allegations that Vertiv was not taking pricing actions.  Mot. 17–20.  Plaintiffs concede (at 17) that Vertiv obtained $53 million in pricing in 2021, over 3x what it achieved the prior year and what it forecast when 2021 began.  Plainly, Vertiv took significant pricing actions.[2]

Plaintiffs instead argue (at 17–20) that Vertiv's historic pricing increase is a "red herring" because Vertiv touted that it would be able to "fully offset" inflation in 2021.  That is wrong.  All three statements they rely upon are mischaracterized and stripped of context in the Opposition:

*First*, Plaintiffs (at 18) heavily rely on an opinion statement by Niederpruem in May 2021 that Vertiv predicted it would recover the "vast majority" of inflation and that Vertiv's pricing forecast was the "floor" with "upside."  But at the time of that statement, Vertiv's forecast (which Niederpruem cited) was that full-year inflation would be only "$45 million."  Ex. 13 at 17; Ex. 17 at 13.  At the same time, Vertiv forecast that it would recover "$25 million" in pricing.  Ex. 13 at 17.  Inflation in 2021 ended up being *more than four times* Vertiv's forecast—and Vertiv obtained *more than twice* the then-forecast $25 million pricing "floor."  Niederpruem's May 2021 prediction that Vertiv would recover the "vast majority" of $45 million in inflation cannot be false merely because Vertiv did not offset the ultimate $188 million in inflation.

*Second*, Plaintiffs assert (at 18–19) that Johnson promised Vertiv would "fully offset" inflation in 2021.  Plaintiffs flagrantly misrepresent his July 28, 2021 statement that "by the time we get to Q4, we will have pricing that fully offset[s] inflationary costs" (Ex. 21 at 6), claiming (at 18) that Johnson "nowhere qualified those statements as being limited to the fourth quarter only."  In fact, Johnson expressly referred listeners (Ex. 21 at 6) to a chart on "slide 6" of Vertiv's accompanying presentation, which showed Vertiv's forecast that pricing and inflation would offset

---

[2] Tellingly, both the AC and the Opposition are effectively silent on Vertiv's list prices, even though Vertiv disclosed that increased list prices accounted for the "majority" of its pricing recovery in 2021.  Mot. 20.

*within* Q4 2021. Ex. 22 at 6.[3]  Far from suggesting Vertiv would "fully offset" *full-year* inflation, the same slide forecast $65 million in "full year" pricing but $110 million in "full year" inflation. *Id.*  And Vertiv reiterated during the same call that it anticipated "$45 million net inflation headwinds" in 2021—i.e., *that inflation would exceed pricing in 2021 by $45 million.*  Ex. 21 at 8.  Thus, while Plaintiffs claim (at 19) that Vertiv forecast it would "somehow obtain" $110 million in pricing to "fully offset" inflation by the end of 2021, *Vertiv never forecast that it would do that.* Plaintiffs made that up.

*Third*, Johnson did not state on October 27, 2021—as Plaintiffs claim throughout the Opposition—that Vertiv would "cover" inflation in 2021 even if it was "potentially worse" than the $155 million Vertiv forecast at that time.  To the contrary, Vertiv disclosed that it expected to *offset only $55 million* of that $155 million.  Ex. 28 at 19.  When asked for "more color on what you're *thinking about for next year*," Johnson addressed the impact of pricing actions *in 2022*: based on what Vertiv was "doing now and [would] be doing in 2022," Vertiv would be "positive in price" and its actions "now and going forward" would cover "potentially worse" inflation.  Ex. 27 at 9.  Johnson was right: in 2022, Vertiv's pricing exceeded inflation.  *See* Supp. Ex. 1 at 9, 28.

*Plaintiffs' own brief* belies their theory that Vertiv promised to fully offset inflation in 2021.  Plaintiffs concede (at 20) that on July 28, 2021, and October 27, 2021—the same dates of the statements they claim assured that Vertiv would fully offset inflation in 2021—Vertiv disclosed that it anticipated offsetting only *59% and 36%* of inflation in 2021, respectively.[4]  That Vertiv

---

[3] Plaintiffs' claim (at 18) that "[a]t no point during the Class Period did Defendants ever report, discuss or disclose forecasts for inflation or pricing on a quarterly basis" is thus also false.  *See, e.g.*, Ex. 22 at 10 (Q3 forecast of $25 million pricing and $45 million inflation); Ex. 28 at 10 (Q4 forecast of $30 million pricing and $55 million inflation).

[4] Plaintiffs' reliance (at 18–19 & n.7) on Fallon's October 27, 2021 reference to a "tailwind" with a "floor" of $5-to-$10 million at "the end of the fourth quarter" is yet more misdirection.  As Fallon explained in the same call, Vertiv forecast that inflation would outpace pricing by "$25 million" in Q4, but the "wraparound" effect of Vertiv's pricing actions meant Vertiv anticipated pricing outpacing inflation by at least $5 to $10 million *in FY 2022*.  Ex. 27 at 11, 14.  Analysts fully understood that Fallon forecast that inflation would be a "$25 million" "net price headwind" in Q4 2021, but "as you go through '22, that number should start to become positive" (which it did).  *Id.*

ultimately offset only 28% of inflation, after costs surged in Q4, is not fraud.

That Vertiv obtained "only" $25 million in pricing over the first three quarters of 2021 also does not support Plaintiffs' theory. That was higher than Vertiv's initial projection for *all* of 2021. Plaintiffs also do not dispute that Vertiv disclosed its pricing would "lag" inflation by multiple quarters, Mot. 8, meaning that Vertiv's $28 million pricing benefit in Q4—when it got more pricing than in *all* of 2020 or 2019—was necessarily based on actions taken earlier in 2021.

For these reasons, Plaintiffs' reliance on *In re Allianz Global Investors U.S. LLC Alpha Series Litigation*, 2021 WL 4481215, at *29 (S.D.N.Y. Sept. 30, 2021), where a firm allegedly decided to bet on the market while telling investors it was acting to stay "market-agnostic," is misplaced. Here, there is no dispute that Vertiv implemented pricing actions in 2021. That the actions offset less inflation than expected was due to inflation increasing far beyond what Vertiv predicted, especially in Q4. Mot. 11 & n.2. But it is settled that a "failure to accurately forecast evolving business conditions does not equate to fraudulent conduct." *City of Sterling Heights Police & Fire Ret. Sys.* v. *Vodafone Grp. Pub. Co.*, 655 F. Supp. 2d 262, 269 (S.D.N.Y. 2009).

***Plaintiffs Fail to Support Their Conclusory FE Allegations.*** Given Vertiv's undisputed $53 million pricing increase, Plaintiffs' citation to FEs who allegedly claimed that Vertiv's prices "did not increase in 2021" (at 15–16) is implausible. Plaintiffs also plead no facts alleging how these FEs could support the allegation that Vertiv took no pricing actions across all products and regions in 2021: FE-1 was a regional VP who left Vertiv in March 2021, before Vertiv disclosed it was instituting pricing actions to partially pass through costs, ¶¶ 83, 125; FE-2 was a junior employee who left Vertiv two years before the Class Period and allegedly placed two orders as a customer in 2021, ¶ 85 n.6; and the low-level FE-5 sold certain products in a city-sized territory, ¶ 90 n.8. The limited support for these FE allegations stands in stark contrast to Plaintiffs' cases.

In *In re NIO, Inc. Securities Litigation*, 2021 WL 3566300, at *7 (E.D.N.Y. Aug. 12, 2021), the court credited allegations about factory development from an FE in charge of factory development. In *In re Tufin Software Technologies Ltd. Securities Litigation*, 2022 WL 596861, at *8 (S.D.N.Y. Feb. 25, 2022), the court credited allegations by FEs who (unlike FE-1 and -2) defendant employed during the "operative period." And while the *Tufin* FEs' regional roles did not undercut their allegations that Tufin misstated its typical sales cycle, *id.*, FE-5's experience in a tiny territory for one division cannot prove a negative (no pricing actions) about Vertiv as a whole.[5]

   ***Plaintiffs Mischaracterize Defendants' Post-Class-Period Statements.*** Plaintiffs offer distorted and implausible readings of post-Class-Period statements in an effort to reverse engineer falsity. But Defendants' backward-looking disappointment with their Q4 guidance miss cannot substitute for particularized allegations of contemporaneous falsity. *See In re Lululemon Sec. Litig.*, 14 F. Supp. 3d 553, 571 (S.D.N.Y. 2014), *aff'd*, 604 F. App'x 62 (2d Cir. 2015). Plaintiffs' claim (at 14) that Defendants made "powerful admissions" of falsity because they stated Vertiv "wasn't set up to drive a lot of price" or that Vertiv was at risk of "generally underpric[ing]" orders ignores that fundamental point: None of the post-Class-Period statements excerpted in the Opposition (at 13–15) admitted that Vertiv did not take pricing actions in 2021 or that any specific pricing action Vertiv stated it implemented in 2021 was not actually implemented in 2021.

   To the contrary, what the post-Class-Period statements make clear is that Defendants believed Vertiv *was*—consistent with its forecasts—successfully getting price in 2021. Only in retrospect was the pricing insufficient. Vertiv thus explained that the reason for its "tepid 2021 pricing response" was that "[w]e consistently underestimated inflation and supply chain constraints for both timing and degree." Ex. 36 at 1. Johnson explained that Vertiv salespeople

---

[5] Plaintiffs' suggestion (at 16) that all FEs had visibility into Vertiv's global pricing response in 2021 because Vertiv's pricing initiatives were implemented "*uniformly*" around the globe is not supported by any allegations in the AC.

believed they were raising prices aggressively, but "[t]he costs got ahead of our pricing. And when people thought . . . hey, *we're doing a lot of price*, no, we've got to do a lot more because here's where our cost is." Ex. 39 at 4. And Niederpruem explained that "*I think we proved that we could get price* [in 2021], it's just that we did not raise pricing enough because there's some lack of visibility on how much worse inflation was going to be." Ex 40 at 8.

Post-Class-Period references to changing Vertiv's "culture" or to more recent pricing actions as "aggressive" thus do not "admit" Vertiv misstated its pricing actions in 2021; rather, in hindsight, Defendants' "learnings" included that they could and should become even more aggressive about pricing. Ex. 37 at 13. But that Defendants believed they had to make changes because their pricing—*which far exceeded their initial 2021 forecast*—was too limited *in retrospect* does not suggest their Class Period statements were false. *See Yourish* v. *Cal. Amplifier*, 191 F.3d 983, 996–97 (9th Cir. 1999) ("[I]t is clearly insufficient for plaintiffs to say that a later, sobering revelation makes an earlier, cheerier statement a falsehood." (quotation marks omitted)).

While Plaintiffs say (at 14–15) that Defendants would not have made these so-called "admissions of fault" if they had only "underestimated inflation," they provide no support for that conclusion. In fact, the full statements make clear that underestimating inflation was precisely what Defendants "admitted": when Fallon said he "realized" that "we have likely damaged some of our credibility in 2021," he referred to the "quality of our external guidance." Ex. 37 at 9. When Johnson said "we screwed up," the "screw[] up" was that "[w]e significantly underestimated the magnitude of the material and freight inflation in the fourth quarter forecast," which led to the "guidance miss." *Id.* at 5. Even Plaintiffs' cited statement (at 14) that Vertiv "got behind on the inflation recovery curve with insufficient price" means only that pricing was insufficient to match ultimate inflation. These statements are not admissions that Vertiv's guidance was fraudulent.

7

***Plaintiffs' Claims Based on One Escalation-Clause Statement Fail.*** Plaintiffs do not seriously dispute that Niederpruem's April 2021 statement that "sometimes" Vertiv had "material clauses" in "larger contracts" was true. *See* Opp. 21 ("[E]ven if *some* contracts did have such clauses . . . ." (emphasis in original)). Plaintiffs now pivot (at 20) to an argument that the statement was misleading because he supposedly "assured" investors that Vertiv would recoup higher costs on backlog orders through such clauses. Niederpruem said no such thing. His statement nowhere suggested that escalation clauses would contribute significantly—or in any concrete way—to Vertiv's pricing in 2021. To the contrary, he stated that it was "easier to get price on new orders" than on the backlog. Ex. 13 at 19. Because pricing was easier on new orders, he warned investors that his expectation was that pricing would "ramp" as 2021 progressed. *Id*. And he never *assured* investors that escalation clauses would allow Vertiv to price up its backlog; rather, it was only one of the "different ways" that Vertiv was "***looking and trying to execute*** that pricing." *Id*.

Plaintiffs also emphasize (at 20–21) Niederpruem's post-Class Period statement that Vertiv was adding escalation clauses to certain contracts with large customers, Ex. 40 at 12–13, but he never previously suggested that all, or even most, of Vertiv's contracts with large customers had such clauses: His statement that large customer contracts only "sometimes" had escalation clauses was consistent with Vertiv's Class Period disclosures about its "long-term, fixed-price contracts" and its need to add "price escalations" to more contracts. Mot. 21. Plaintiffs also omit that Vertiv *did* achieve pricing on its backlog on certain materials in 2021. *Id*. Finally, Plaintiffs have no response to Defendants' showing that the FEs they cite on escalation clauses in large enterprise contracts are not alleged to have had any exposure to such contracts or customers. *See* Mot. 22.

***Plaintiffs' Claims Based on Two Statements About Discounts Fail.*** Plaintiffs challenge two statements by Niederpruem indicating that Vertiv became more "judicious" with discounts in

8

recent years and obtained some pricing in 2021 by controlling discounts. But *they nowhere allege* that Vertiv had not taken actions to control discounts at the time of those statements. *See* Mot. 23.

Absent allegations that the statements were false, Plaintiffs simply mischaracterize them. While they stress (at 22) that in May 2021, Niederpruem cited being more "judicious" with "discounts" as one tactic to "cover" inflation, they ignore that Vertiv's 2021 inflation forecast was then $45 million, Ex. 13 at 17, which Vertiv *did* "cover." And they blatantly *misquote* (at 22–23) his November 2021 reference to "controlling the discounts"; Niederpruem did not say controlling discounts drove the "majority" of price Vertiv was getting, he said "*the majority of the price comes from list price increases*," and controlling discounts was one of several other levers. Ex. 30 at 6.

Plaintiffs next rely (at 22) on "admissions" and "first-hand FE accounts," but none conflict with Niederpruem's statements. Post-Class Period statements about Vertiv's efforts to reduce discounting do not show falsity during the Class Period; efforts to change Vertiv's sales culture *after* 2021 do not mean Vertiv had not previously taken steps to control discounting. Vertiv instead implemented "even tighter control" over discounting than it already had. Ex. 37 at 12.

Plaintiffs' reliance (at 22) on FE allegations that Vertiv offered discounts also misses the point: Niederpruem's statements confirmed that Vertiv was, consistent with industry practice, continuing to offer discounts. That Vertiv's policy manual allegedly permitted discounting up to certain levels (*id.*) says nothing about whether Vertiv imposed more control over discounts in 2021. If anything, the FE allegations indicate that discounting *was* reduced in 2021. *See* ¶¶ 85–87 (FE-2 alleging Vertiv offering 65%-to-50% discounts to major accounts but offering 40%-to-35% discounts in 2021). Plaintiffs' view that discounting was still too "rampant" in 2021 "do[es] not move the claims outside the realm of corporate mismanagement" to securities fraud. *Plumber & Steamfitters Loc. 773 Pension Fund* v. *Danske Bank A/S*, 11 F.4th 90, 96 (2d Cir. 2021).

9

Moreover, the FEs were either not at Vertiv when it implemented new pricing actions in 2021 (FE-1 and -2) or are not alleged to have had visibility into whether Vertiv changed discounting controls (FE-5), and thus they have no basis to contravene Niederpruem's statements.  Mot. 19, 24.

*Plaintiffs' Claims Based on One Statement About Supply Planning Fail.*  Plaintiffs do not articulate how Fallon's November 2021 statement that he was comfortable with Vertiv's Q4 sales guidance based partly on "pre-planning with the suppliers as it relates to allocations" is false. Plaintiffs do not allege that pre-planning did not occur.  They allege the opposite—Vertiv management was "directly involved in aggressively attempting to address the[] vendor and supplier challenges."  ¶ 102.  That more suppliers de-committed than expected in Q4 does not mean Vertiv did not pre-plan allocations. Mot. 24–25.  While Plaintiffs argue (at 23) that Fallon's statement left a "false impression" because it did not "disclos[e] the increasingly aggressive supplier decommits that Vertiv experienced," Vertiv had already disclosed that it was facing increased supplier "de-commit[s]," Ex. 24 at 12, and that it was increasingly difficult for Vertiv to get parts at "any price," *id.* at 4–5, "with no improvement expected in the fourth quarter," Ex. 28 at 5.  At the same conference, Johnson warned that whether Vertiv could "get the components" it needed was an open question.  Ex. 30 at 9.  Plaintiffs allege no "false impression."

*Plaintiffs' Claims Based on One Statement About Pricing Tools Fail.*  Finally, Plaintiffs' challenge to Johnson's July 2021 statement that Vertiv had "instituted some . . . pricing tools" to assist salespeople fails because they do not allege that Vertiv did not institute such tools.  While they allege that FEs complained about the integration of Vertiv's "Configure, Price, Quote" (CPQ) system in 2021, ¶¶ 105–112, these allegations fail because (i) challenges with instituting CPQ (even if true) would not render a general statement about instituting pricing tools false, Mot. 25–26, and (ii) Plaintiffs nowhere allege that the "pricing tool[]" Johnson referred to—which he

10

described as "data analytics" (Ex. 21 at 19)—was CPQ.[6]

## B. Statements About Actions Pre- and Post-Class Period Are Not Actionable

Many of Plaintiffs' challenged statements are not actionable because they concern Vertiv's pricing actions before, or its pricing recovery after, the Class Period, and Plaintiffs allege no facts to suggest these statements were false. Mot. 16–17, 30–31. As to pre-Class-Period pricing, while Plaintiffs claim (at 15 n.5) that Johnson falsely stated that Vertiv's pre-Class-Period pricing actions "'continued to yield favorable results' *throughout* 2021," he made that statement in *February 2021,* in reference to *2020's results.* ¶ 116. Plaintiffs do not dispute that Vertiv increased pricing in 2019 and 2020. ¶¶ 40, 140. That increase could only have been achieved through pricing actions, and the AC lacks any allegation that Vertiv did not take pricing actions that "yield[ed] favorable results" in 2019 or 2020. No falsity is pled as to these statements.

Plaintiffs also insist that statements referring to Vertiv's pricing *in 2022* are actionable, though the AC alleges no facts about Vertiv's 2022 pricing. Mot. 30–31. They admit (at 24–25) that certain statements from late 2021 relate to 2022 pricing, which is dispositive since they plead no misstatements about 2022 pricing.[7] Plaintiffs also ignore other statements about 2022 pricing (¶¶ 136, 138, 152, 162, 172), thereby conceding that they are not actionable.

Plaintiffs' challenges to statements on pre- and post-Class-Period pricing also fail because they allege no loss caused by any alleged corrective disclosure on either topic. Mot. 17, 31.

---

[6] Johnson's prior reference on an investor call to "data analytics" implemented to assist sales people with pricing was a 2020 reference to "data lakes," *not* CPQ. Supp. Ex. 2 at 8. Plaintiffs' argument (at 24 n.9) that "the only reasonable inference" is that he was referring to CPQ because "neither Defendants nor any former employee indicated that Vertiv botched the implementation of any system other than CPQ during 2021" rests on the premise that the tool to which Johnson referred *was* implemented in 2021 or that its implementation was botched, both facts the AC nowhere alleges.

[7] Plaintiffs' cites to statements about 2022 pricing again ignore context. In September 2021, Johnson said that Vertiv was "continu[ing]" to take pricing action, but those actions would take a "couple of quarters" to take effect and would be recognized in 2022. ¶ 157. In October 2021, Vertiv predicted that its pricing actions would lead it to be "positive in price" in 2022. ¶¶ 166–167. In fact, Vertiv was "positive in price" in 2022, when it "got" ***$365 million*** in price, compared to $305 million in inflation. Supp. Ex. 1 at 9, 28. These predictions were thus correct, and none of these statements support the argument that Vertiv "mischaracterized Vertiv's then-present actions" (at 25).

11

### C. Many of the Statements Are Non-Actionable Opinions

The AC fails to satisfy *Omnicare*'s pleading requirements because Defendants' opinions about Vertiv's ability to offset inflation with pricing were based on fully-disclosed forecasts of inflation, which Plaintiffs have not alleged Defendants did not believe, and about which Plaintiffs have alleged no omitted facts. Mot. 26–30. Plaintiffs argue that the statements are not properly formatted as opinions, embed untrue facts, or omit material facts. Each argument fails.

*First*, Plaintiffs misread (at 25) *Omnicare* as limited to "express[]" opinions that facially express the speaker's "uncertainty or belief." Plaintiffs' argument has been roundly rejected in this District as "simplistic[]" and "absurd." *In re Turquoise Hill Res. Ltd. Sec. Litig*, 2022 WL 4085677, at *31 (S.D.N.Y. Sept. 2, 2022) (collecting cases). Expectations of future results, even without caveating language, are opinions. *Martin* v. *Quartermain*, 732 F. App'x 37, 44 n.1 (2d Cir. 2018). Plaintiffs' efforts to cast opinions as statements of fact fail under these settled principles. Many challenged statements are pure projections without any accompanying discussion. ¶¶ 115, 124, 127, 142, 145, 160, 162. Numerous others were expressly predictions based on Vertiv's disclosed inflation forecasts. Mot. 26–30. Plaintiffs largely ignore these arguments, emphasizing (at 26) one statement by Johnson in April 2021 that they claim is a fact statement about then-practices. But read in full, the statement is both an expression of Johnson's belief about Vertiv's pricing processes ("*I think* we're getting pretty good …. *So we feel good*"), and his belief that Vertiv could—going forward—"price things at that higher cost," *citing Vertiv's forward-looking guidance* ("We have $10 million . . . of [estimated] additional pricing this year."). ¶ 128. Statements like these that express confidence that current actions will meet future projections "are virtually indistinguishable from the future projections of which they are part, as they turn on the reasonableness of the projections." *Turquoise Hill,* 2022 WL 4085677, at *24.

*Second*, Plaintiffs argue (at 26) that, even if the statements were opinions, they contain

"false supporting facts." But Plaintiffs identify no false supporting facts. Instead, they rehash (at 27) their *conclusions* that Vertiv represented that it stopped discounting or used escalation clauses to drive pricing, representations that Vertiv never made, *supra* 8–10. Plaintiffs also assert (at 27–28) that forecasting statements Vertiv made in July 2021 were false because Vertiv misrepresented that pricing actions were "underway," but fail to allege that Vertiv did not have pricing actions underway (as it must have given the pricing it achieved). At bottom, because Defendants' opinion statements were based on predictions of inflation, for Plaintiffs to allege "false supporting facts," they must plead that Vertiv *never* took pricing actions. *See Wochos* v. *Tesla, Inc.*, 985 F.3d 1180, 1196 (9th Cir. 2021) (statement that Tesla was making "great progress" could be actionable "only if . . . Tesla had been 'making no progress at all'"). But Plaintiffs *admit* the pricing actions Defendants took in 2021 generated $53 million of price. *See supra* 3.

*Finally*, Plaintiffs claim the challenged opinions omitted facts. But they "*must identify particular (and material) facts* going to the basis for the issuer's opinion . . . whose omission makes the opinion statement at issue misleading to a reasonable person *reading the statement fairly and in context*." *Omnicare, Inc.* v. *Laborers Dist. Council Const. Industry Pension Fund*, 575 U.S. 175, 194 (2015). This is "no small task." *Id.* They argue (at 28) that Defendants should have disclosed the "fact" that Vertiv's "culture" "wasn't set up to drive a lot of price." Those are not facts, but hindsight opinions from 2022. Plaintiffs fail to plead that the 2021 opinions about Vertiv's pricing did not "fairly align" with information in Defendants' possession—*i.e.*, inflation forecasts—when they spoke. *Omnicare*, 575 U.S. at 188–89. Plaintiffs also argue (at 28) that the opinions omitted that Vertiv had fixed-price contracts and was facing supply chain issues, but Defendants **repeatedly** disclosed that, often in the same statements. *See* Mot. 5–6.

### D. Many of the Statements Are Non-Actionable Forward-Looking Statements

Many of Defendants' statements are also protected by the PSLRA safe harbor and the

13

bespeaks caution doctrine because they "speak predictively about the future." *Gissin* v. *Endres*, 739 F. Supp. 2d 488, 505 (S.D.N.Y. 2010). While Plaintiffs attempt (at 30) to characterize Defendants' forward-looking statements as "mixed" with misrepresentations of present fact and contend that the safe harbor does not apply in any event, neither argument is persuasive.

Many of the challenged statements are forward-looking because they depended on Vertiv's "inherently contingent prediction" of inflation. *Iowa Pub. Emps. Ret. Sys.* v. *MF Global, Ltd.*, 620 F.3d 137, 143 (2d Cir. 2010). So while Plaintiffs point (at 32) to predictions that Vertiv's pricing actions would partly offset inflation, those disclosures were necessarily forward-looking because the ability of those actions, which acted on a lag, to offset inflation depended on future inflation. *See Gissin*, 739 F. Supp. 2d at 507 n.108 (statements that "refer to present circumstances only as a basis for forecasting future performance, not as a guarantee of the status quo," are forward-looking). Plaintiffs' argument (at 31) that the forward-looking statements were misleading because Defendants said they were monitoring "current" pricing and cost data and "pre-planning" with suppliers suffers from the same flaw—monitoring *current* data and *pre-planning* could not insulate Vertiv from the risk that prices would spike and supply chains would snarl *later*.

That distinguishes this case from Plaintiffs' cases. For instance, in *In re Salix Pharmaceuticals*, statements that inventory levels were expected to rise were based on "representations that *current* inventory levels were" lower than target levels, when they were—*at the time of the statements*—far higher. 2016 WL 1629341, at *10 (S.D.N.Y. Apr. 22, 2016). Here, Plaintiffs fail to allege that Vertiv was *not* taking pricing actions when it spoke or—given Vertiv far exceeded its pricing forecast for the year—that those actions did not have the disclosed impact.

Defendants' forward-looking statements also included meaningful cautionary language. Mot. 32–33. Defendants' cautionary language, which Plaintiffs all but ignore, warned of the

14

precise factors that Plaintiffs claim caused Vertiv's guidance miss. *Id.* at 5–6, 31–32.[8]  Vertiv

disclosed the risks that unexpected supply chain constraints and inflation posed to its financial

guidance given Vertiv's reliance on suppliers to timely provide products at reasonable prices, its

"fixed-price" contracts that exposed it to "substantial risk" of increased costs, and the "downward

pricing pressure" it faced from large customers, and disclosed that Vertiv may not be able to "offset

unexpected increases in material and component costs with [its] own price increases." *Id.*

Far from "boilerplate," Opp. 33, these risk factors were prescient:  they pointed to the

precise dangers that Plaintiffs allege took them by surprise.  ¶¶ 5, 197, 260.  In contrast, Plaintiffs'

cases discounted far more boilerplate disclosures.  *In re Wells Fargo & Co. Sec. Litig.*, 2021 WL

4482102, at *16–17 (S.D.N.Y. Sept. 30, 2021) (defendants disclosed that "management's

expectations could differ from reality"); *Patriot Expl., LLC* v. *SandRidge Energy, Inc.*, 951 F.

Supp. 2d 331, 358 (D. Conn. 2013) (disclosures did "not provide company-specific information").

Plaintiffs next shift (at 34) to a theory that the risks Vertiv warned of had "already

materialized."  But as even Plaintiffs' authorities confirm, a company has no obligation to

supplement a risk disclosure absent "known material, adverse facts." *In re Blue Apron Holdings,*

*Inc. Sec. Litig.*, 2020 WL 1950783, at *9 (E.D.N.Y. Apr. 22, 2020).  In Plaintiffs' cases (at 34),

companies failed to disclose factors harming their financial condition at the time of the statements.

Here, while the risks to Vertiv's guidance increased as costs and supply constraints increased,

particularly in Q4, "[a]n increase in a risk does not mean the risk has already come to pass, such

that a disclosure that simply identifies the risk would be misleading." *Okla.  L. Enf't Ret. Sys.* v.

---

[8] Plaintiffs' argument (at 33) that cautionary statements were not in the "same document[s]" is a non-starter.  Unlike in *In re Vale S.A. Securities Litigation*, 2017 WL 1102666 (S.D.N.Y. Mar. 23, 2017), Vertiv expressly incorporated the risk factors from its SEC filings into the documents and statements Plaintiffs challenge, *e.g.,* Ex. 3 at 2, which courts routinely deem sufficient. *See, e.g.*, *In re Fairway Grp. Holdings Corp. Sec. Litig.*, 2015 WL 4931357, at *17 (S.D.N.Y. Aug. 19), *report and recommendation adopted*, 2015 WL 5255469 (Sept. 9, 2015).

*Papa John's Int'l, Inc.*, 517 F. Supp. 3d 196, 211 (S.D.N.Y. 2021) (quotation marks omitted).

Finally, Plaintiffs contend (at 35) that Defendants' October 2021 knowledge that they had recovered only $25 million in price, while projecting over $150 million in inflation, renders their Q4 guidance misleading. But in October, Vertiv disclosed that its guidance was based on Vertiv achieving $55 million in pricing against $155 million in inflation. Ex. 28. Vertiv did not miss guidance because it did not get $55 million in pricing (Vertiv got $53 million); Vertiv missed guidance because inflation shot up in Q4 and was 60% higher than the October forecast. Mot. 11.

### E.  Many of the Statements Are Non-Actionable Puffery

Puffery is a "legal question that may be determined from the allegations in the complaint," and courts regularly dismiss securities claims premised on puffery. *See, e.g.*, *In re Fairway*, 2015 WL 4931357, at *12–13. The Opposition tacitly admits (at 36) that statements like the "foundation we've established . . . gives me confidence" and the "outlook remains very positive" are classic puffery. *See Friedman* v. *Endo Int'l PLC*, 2018 WL 446189, at *5 (S.D.N.Y. Jan. 16, 2018); Ex. 1 (listing statements containing non-actionable puffery). Instead, Plaintiffs argue (at 35) that because pricing was important, *any* statement made on the subject was non-puffery. But even if the subject of a statement is "undeniably important, that does not render a particular statement [on that subject] per se material." *ECA & Local 134 IBEW Joint Pens. Trust of Chicago* v. *J.P. Morgan Chase Co.*, 553 F.3d 187, 206 (2d Cir. 2009).

Plaintiffs also contend (at 36) that Defendants' "generalized positive" statements are still actionable because they were linked to the allegedly false underlying fact that Vertiv was taking pricing actions. However, Plaintiffs concede that this "underlying" fact is true. *See supra* 3.

## II.    Plaintiffs Fail to Allege a Strong Inference of Scienter

The AC should be dismissed for the independent reason that it does not allege a strong inference of scienter. Far from providing an inference that is as "cogent and at least as compelling

as any opposing inference," *ECA,* 553 F.3d at 198, the Opposition ignores the most compelling inference to be drawn from the AC's allegations:  Officer Defendants believed Vertiv's pricing actions would offset some inflation and made projections accordingly, but inflation surged beyond estimates.  Mot. 35–36.  The very statements that Plaintiffs rely on convincingly support the inference that Vertiv suffered a guidance miss due to unexpected events.

### A.  Plaintiffs' Motive Theory Is Unsupported and Illogical

Plaintiffs' fraud theory is significantly undermined by lack of motive.  As Plaintiffs cannot refute, the Officer Defendants sold no stock, exercised no options (despite having vested options), and at least one Officer Defendant purchased shares during the Class Period.  Mot. 36.  These actions are irreconcilable with an intent to defraud.  *See Greco* v. *Qudian Inc.*, 2022 WL 4226022, at \*24 (S.D.N.Y. Sept. 13, 2022); *Turner* v. *MagicJack VocalTec, Ltd.*, 2014 WL 406917, at \*10–11 (S.D.N.Y. Feb. 3, 2014).  The most compelling inference is thus that Officer Defendants underestimated global inflation.  *See In re Wachovia Equity Sec. Litig.*, 753 F. Supp. 2d 326, 356 (S.D.N.Y. 2011) (dismissing for lack of scienter because court could not assume that the duration of the financial crisis was "both inevitable and foreseeable to Defendants"); *Loc. No. 38 Int'l Bhd. of Elec. Workers Pension Fund* v. *Am. Exp. Co.*, 724 F. Supp. 2d 447, 463 (S.D.N.Y. 2010) (dismissing for lack of scienter where "more compelling inference is that Defendants' aggressive growth strategy was sideswiped by the collapse of the credit markets"); *In re PXRE Grp., Ltd. Sec. Litig.*, 600 F. Supp. 2d 510, 534 (S.D.N.Y.) (dismissing where more compelling inference was that defendants failed to "calculate accurately the full extent of losses that were incurred by the unique phenomenon presented by the 2005 hurricane season"), *aff'd*, 357 F. App'x 393 (2d Cir. 2009).

Unable to show any financial benefit to Officer Defendants from the alleged fraud, Plaintiffs resort to the illogical theory (at 43) that Officer Defendants were "beholden" to a non-controlling minority shareholder and "had a motive to facilitate the SPO or be ousted by

17

[Platinum]." Yet stock sales by Platinum are irrelevant to the Section 10(b) Defendants' motives. Mot. 37. And Plaintiffs' theory makes no sense, as they admit (at 20, 43) that Officer Defendants made a corrective disclosure in September 2021, right before the SPO, and held their own large stock positions through the February 2022 drop. Plaintiffs' theory is also unsupported by any factual allegations: Plaintiffs offer no basis for their assertion that Platinum "controlled Vertiv" as a "dominant shareholder," ignoring that Platinum entities held only 15.9% of Vertiv stock before the SPO. ¶ 251. Nor are there *any* factual allegations to support the conclusions that Officer Defendants were "beholden" to Platinum, who would hold only 10.6% of Vertiv's shares post-SPO, *id.*, or would be "ousted" if the SPO was not executed at a certain price.

Finally, Plaintiffs suggest that Officer Defendants intended to "inflate" Vertiv's share price before the SPO, by (again) mischaracterizing (at 42–43) the pre-SPO statements. Johnson's October 2021 statements that Vertiv's "robust pricing actions" would "cover" inflation even if it got "worse" were made in response to a request for "color on what you're thinking about *for next year* [2022]." Ex. 27 at 9. And Vertiv's slight guidance raise during the same announcement expressly reflected a recent acquisition and divestiture. Mot. 30. Vertiv further disclosed that its revised guidance assumed "supply chain headwinds continue at current levels" in Q4 2021, *id.* at 10, meaning Vertiv might miss its guidance if those headwinds increased, as they did.

### B. Plaintiffs' Allegations of Conscious Misbehavior or Recklessness Fail

The "strength of the circumstantial allegations" of conscious misbehavior or recklessness "must be correspondingly greater if there is no motive." *ECA*, 553 F.3d at 198–99 (quotation marks omitted). On this theory, "Second Circuit cases uniformly rely on allegations that [1] *specific* contradictory information was available to the defendants [2] at the same time the [speakers] made their [allegedly] misleading statements." *PXRE Grp.*, 600 F. Supp. 2d at 536 (quotation marks omitted). Plaintiffs do not satisfy that standard.

18

*First*, while Plaintiffs assert (at 37) that "Defendants' repeated representations" about Vertiv's pricing supports a "strong inference" that Officer Defendants knew those statements were false, Plaintiffs conflate falsity with scienter. As their own cases show, the Complaint must specifically allege contemporaneous, adverse, and undisclosed facts defendants must have known. *See e.g.*, *In re General Electric Co. Sec. Litig.*, 857 F. Supp. 2d 367, 395–96 (S.D.N.Y. 2012) (CFO's detailed reports on portfolio meant he must have "educated himself" on its composition and would know it *then* had large undisclosed subprime exposure). Plaintiffs do not identify any detailed, contemporaneous data available to Officer Defendants contradicting their statements.

In fact, Officer Defendants are not alleged to have had access to *any* contradictory data at the time of their statements. Mot. 40. Plaintiffs point (at 38) to Niederpruem's May 2021 statement that he and Fallon "reviewed pricing and cost data in real time '8 days a week,'" before he predicted Vertiv could recover the "vast majority of any inflationary stuff." But Plaintiffs fail to identify any *contemporaneous* data that contradicted his prediction, which was based on expected 2021 inflation of $45 million. *Supra* 3. And while FE-3 allegedly stated (at 41) that Johnson and Fallon "had access to daily updates of sales, pricing, and margins," they do not allege when Johnson or Fallon received these updates or any contradictory data they contained.[9]

*Third*, Officer Defendants' post-Class-Period statements do not support scienter. Plaintiffs repeatedly engage in improper group pleading, including by imputing knowledge to all Officer Defendants based on statements by Defendants (*e.g.,* Cote) against whom fraud is disclaimed. *See, e.g.*, ¶¶ 186–187; Opp. 38–39; ECF 60-1 at 1. Regardless, their post-Class-Period statements (at 38–39) *do not contradict* their prior statements and cannot support scienter. *Glaser* v. *The9, Ltd.*,

---

[9] Johnson's alleged participation in supply chain meetings and approval of discounts is not evidence of scienter for the same reason: It does not contradict his statements, and is consistent with Vertiv's disclosures that it was engaged in efforts to address significant supply headwinds, that it offered discounts, and that large customers got better terms.

19

772 F. Supp. 2d 573, 597 (S.D.N.Y. 2011).   The post-Class-Period statements do not suggest Vertiv did not take pricing actions or steps to control discounts in 2021.  *Supra* 6–7.  That Officer Defendants spoke "with the benefit of hindsight" is no indication they "knew at the time there was no reasonable basis for [their] projections."  *Frankfurt-Tr. Inv. Luxemburg AG* v. *United Techs. Corp.*, 336 F. Supp. 3d 196, 228 (S.D.N.Y. 2018), *aff'd*, 779 F. App'x 69 (2d Cir. 2019).

Plaintiffs similarly argue (at 40) that Officer Defendants' statements that they "screwed up" and "likely damaged some of our credibility" "are not statements that senior officers make when they simply fail to predict something correctly."  Plaintiffs present no specific allegations that Officer Defendants did not sincerely believe their guidance.  Plaintiffs insist "Defendants did not say that they were . . . taking responsibility for a forecasting miss'"—but that is *exactly what Officer Defendants said*.  *See supra* 6–7.  And, as detailed *supra*, Defendants' other post-Class-Period statements are aligned with the compelling, non-fraudulent inference of a forecasting miss.

*Fourth*, the analyst reports cited by Plaintiffs are not relevant to scienter.  *See In re Ariba, Inc. Sec. Litig.*, 2005 WL 608278 at *1, *8 (N.D. Cal. Mar. 16, 2005) (no inference of scienter even though analysts "openly question[ed] the credibility of [company] management").  Rather than referencing any "false impressions" given by Vertiv management as Plaintiffs contend (at 40), the analysts express frustration with the guidance miss.  While an analyst stated that Vertiv's statements after Q3 provided investors with a "sense that it was in control of pricing conditions," ¶ 70, that does not imply that—at the time they made the challenged statements prior to the impact of the Q4 inflation spike—Officer Defendants believed they were not in control.[10]

*Fifth*, the Second Circuit has expressed great skepticism as to the "core operations" theory.  Only "[i]n exceedingly rare instances, a statement may be so 'dramatic' that collective corporate

---

[10] Throughout the Opposition, Plaintiffs cite the size of the February 2022 stock decline, but that is not a basis for inferring scienter.  *Firemen's Ret. Sys. of St. Louis* v. *Telos Corp.*, 2023 WL 1512207, at *10 (E.D. Va. Feb. 1, 2023).

20

scienter may be inferred." *Jackson* v. *Abernathy*, 960 F.3d 94, 99 (2d Cir. 2020). Merely alleging misstatements regarding a "key product" is not enough, *id.*, and the theory is not an "independently sufficient means to plead scienter," *Wachovia*, 753 F. Supp. 2d at 353. Plaintiffs' assertion (at 42) that pricing was the "single most important issue facing the Company" stretches the theory far beyond those limits—profit margins are not "core operations" but are instead general corporate goals. And nowhere do Plaintiffs allege "the significance of [Vertiv's pricing actions] relative to core [Vertiv] business" or its quantitative significance to Vertiv's overall performance. *Id.* at 358.

## III.    Plaintiffs Do Not Allege Violations of Sections 11 and 12(a)(2)

Plaintiffs contend (at 44) that Rule 9(b)'s fraud pleading standard does not apply to their Securities Act claims because it is supposedly clear "which allegations are intended to support which claim." Notwithstanding Plaintiffs' separation of their claims into "different sections" and their "disclaim[er] . . . of fraud as to their Securities Act claims," "[c]ourts in this District uniformly apply Rule 9(b) to Complaints that separate allegations in this manner so long as the theories of liability are the same under both statutes." *City of Omaha Pol. & Fire Ret. Sys.* v. *Evoqua Water Techs. Corp.*, 450 F. Supp. 3d 379, 402 (S.D.N.Y. 2020). Where, as here, Plaintiffs' Securities Act claims are "almost a mirror image of their Exchange Act claims," Rule 9(b) applies. *Id.*

But whatever standard applies, Plaintiffs' Opposition confirms their failure to plead Securities Act claims. Plaintiffs first argue (at 45–46) that Vertiv's risk factor in its April 30, 2021 Amended 10-K, incorporated by reference in the Prospectus, about contracts with large customers that could result in "downward pricing pressure" was misleading by omitting the materialized risk that larger contracts had fixed prices that would dampen margins if Vertiv's costs increased. That risk was not omitted: Vertiv disclosed in the same document that it had *already* entered into fixed-price contracts with customers that could squeeze margins if costs increased, Ex. 15 at 16–17. Plaintiffs claim (at 45) that Vertiv should have still disclosed that—as Johnson purportedly later

21

"admitted"—it did not have *any* larger contracts with escalation clauses, but there was no such "admission." He said only that such clauses were not in "*all*" contracts prior. Ex. 37 at 17.

Plaintiffs also argue (at 47–48) that a risk factor from the same Amended 10-K that Vertiv's backlog "may not result in profitable revenue" had materialized. But they *concede* (at 48) they fail to allege Vertiv's backlog was not profitable at any time during the Class Period. Indeed, there is no reason to believe it was unprofitable in 2021: Vertiv reported significant profits. Mot. 42.[11]

Finally, to the extent Plaintiffs are complaining that Vertiv should have provided more detailed warnings about how inflation may impact guidance, they still fail to state a claim because issuers are not obligated to predict the precise manner in which a risk will impact financial performance. *See Gomez* v. *Credit Suisse AG*, 2023 WL 2744415, at *9 (S.D.N.Y. Mar. 31, 2023) (where "[d]efendant explicitly warned that supply and demand forces could cause the price of [ETNs] to rise . . . which is exactly what occurred . . . the warnings in the Offering Documents . . . were directly on point"). Ultimately, Vertiv missed its Q4 guidance because Q4 inflation was 60% higher than expected. But Plaintiffs allege no facts to suggest *that* risk had materialized by the SPO, and "[i]t is not a material omission to fail to predict future market performance." *Gomez*, 2023 WL 2744415, at *9 (quotation marks omitted); *see In re Home Point Cap. Inc. Sec. Litig.*, 2022 WL 18932069, at *4 (E.D. Mich. Oct. 5, 2022). Nor does a risk factor become false merely because a risk increases. *Okla. L. Enf't Ret. Sys.*, 517 F. Supp. 3d at 211.

## CONCLUSION

For the above reasons, the Court should dismiss the Complaint with prejudice.

---

[11] Plaintiffs also contend (at 47) that Defendants "effectively conced[ed]" that the risk factors became false after April 30, 2021, the date those statements were made in the Amended 10-K, but Defendants conceded no such thing. Rather, Defendants' argument is clear that the risk factors were not false *either* as of April 30 or as of November 4, 2021. Mot. 42. And while Plaintiffs fail to allege falsity as to either date, the operative date for purposes of the Securities Act claims is the earlier date (April 30, 2021). Any other reading would ignore the Prospectus's clear language that forward-looking statements speak "only as of …*any earlier date specified for such statements*." Ex. 29 at S-v.

Dated:  New York, New York
      May 15, 2023

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**

By: */s/ Audra J. Soloway*

    Audra J. Soloway
    David P. Friedman

1285 Avenue of the Americas
New York, New York 10019
(212) 373-3000
asoloway@paulweiss.com
dfriedman@paulweiss.com

*Counsel for Vertiv Holdings Co, Rob Johnson, David Fallon, Gary Niederpruem, David Cote, Joseph van Dokkum, Roger Fradin, Jacob Kotzubei, Matthew Louie, Edward L. Monser, Steven S. Reinemund, and Robin L. Washington*

**LATHAM & WATKINS LLP**

By: *J. Christian Word*

    J. Christian Word

555 Eleventh Street, NW
Washington, D.C. 20004
(202) 637-2200
christian.word@lw.com

*Counsel for Platinum Equity Defendants*

**ROPES & GRAY LLP**

By: */s/ David B. Hennes*

    David B. Hennes
    Adam M. Harris
    Elena Weissman Davis

23

1211 Avenue of the Americas
New York, New York 10036
(212) 596-9000
david.hennes@ropesgray.com
adam.harris@ropesgray.com
elena.davis@ropesgray.com

*Counsel for Underwriter Defendants*

24