

April 4, 2025

**VIA ECF**
The Honorable Ona T. Wang
United States Magistrate Judge
U.S. District Court for the Southern District of New York
500 Pearl Street
New York, NY 10007

   Re:  *In re Vertiv Holdings Co. Securities Litigation*, No. 1:22-cv-3572-GHW-OTW

Dear Judge Wang:

  Lead Plaintiffs respectfully provide notice of the recent decision in *In re The Estée Lauder Co., Inc. Securities Litigation*, 23-cv-10669-AS, ECF No. 59, 2025 WL 965686 (S.D.N.Y. Apr. 1, 2025) (Submaranian, J.) ("*Estée Lauder*" or "Order") (attached as Exhibit A), in further support of their opposition to Defendants' motion to dismiss the Complaint, which has been pending before the Court since May 15, 2023.[1]

  In *Estée Lauder*, the plaintiffs alleged that the defendants made a series of false statements repeatedly touting the company's retail success in China when in reality that success was due to the company's reliance on *daigou*, or prohibited gray market sales. The court's decision that the plaintiffs adequately pleaded both falsity and scienter further supports Your Honor's findings set forth in the November 6, 2023 R&R, which concluded that Plaintiffs adequately pleaded both falsity and scienter in this case. *See* ECF No. 74.

  *First*, with respect to falsity, the court in *Estée Lauder* found it significant that, "at the end of the day, Estée Lauder itself linked its declining sales to the government's crackdown on *daigou*" through its admissions at the end of the Class Period. Order at 10; *see also id.* (falsity was supported where "defendants' own words cut against them"). So too here, Defendants repeatedly asserted throughout the Class Period that Vertiv would be able to "recover the vast, vast, vast majority" of inflation through its implementation of "robust pricing actions," "controlling the discounts that [its] salespeople" could offer, and leveraging "material escalation clauses" in larger contracts to retroactively "institute[] surcharges" on Vertiv's over $2 billion backlog (¶¶52, 61, 64-65, 117, 132)—only to later admit that none of this was true. In reality, Vertiv "didn't and wasn't set up to drive a lot of price" (¶61); had a "culture" of "[g]iving away the pricing that we were getting through discounting" (¶¶64, 187); and did not, in fact, have material escalation clauses in the majority of its existing contracts, meaning the Company "didn't get a lot of pricing on the backlog that we had[,] [t]hat was part of our problem." ¶¶63, 78. Thus, here, as in *Estée Lauder*, Defendants' admissions confirm the falsity of their earlier statements.

---

[1] Unless otherwise noted, all capitalized terms have the same meanings as in the Amended Consolidated Complaint (ECF No. 25) ("Complaint") or in Judge Ona T. Wang's November 6, 2023 Report and Recommendation to the Hon. Gregory H. Woods (ECF No. 74) ("R&R"). References to "¶_" are to the Complaint.

Hon. Ona T. Wang
April 4, 2025
Page 2

*Second*, the court in *Estée Lauder* held that defendants' statements touting the "continued strength of our brands" in China were misleading "half-truths" because they omitted the company's reliance on *daigou*, as "once a company speaks on an issue or topic, there is a duty to tell the whole truth." Order at 6. The court found that Estée Lauder "touted the reasons for its success while leaving out the parts of the truth it found inconvenient," *i.e.*, the company's reliance on *daigou*, and "the securities laws don't tolerate" the "telling of half-truths." *Id*. at 7.

Similarly, here, Defendants have argued that their statements about Vertiv's implementation of "robust pricing actions" were not false because Vertiv obtained *some* pricing in 2021 (*i.e.*, $53 million)—while omitting the "inconvenient" and highly material fact that, in reality, those price increases were dwarfed by the significantly greater increases in cost impacts of inflation. Indeed, as the R&R correctly found, contrary to Defendants' representations about being able to offset the "vast, vast, vast majority" of inflation through pricing, "Vertiv's $53 million over the cour[se] of 2021 would not have come close to offsetting its inflation predictions in the second half of 2021." R&R at 16, n7. Defendants have also asserted that their statements that they could use "material escalation clauses" in the Company's larger contracts to match inflation were not misleading because Plaintiffs did not allege that *none* of Vertiv's contracts had such clauses. However, as the R&R correctly found, even if *some* of Vertiv's contracts had these clauses, Defendants' statements misleadingly omitted the highly material fact that the majority did not. R&R at 17. Defendants have similarly argued that their statements that they were "controlling [] discounts" were literally true because Plaintiffs are unable to allege that Vertiv was not controlling *some* discounting—but as the R&R again correctly found, the fact that in reality "Vertiv was giving extensive discounts as a matter of course" rendered Defendants' statements about "controlling discounts" materially false and misleading. R&R at 18.

*Third*, the court in *Estée Lauder* found that Defendants' statements about anticipating "sequential acceleration" in sales without disclosing the company's reliance on *daigou* were not protected by the PSLRA safe harbor because these statements were "based on misrepresentations of the present-day facts on the ground," and "[t]he safe harbor doesn't extend that far." Order at 10-11. Similarly, here, the R&R correctly found that Defendants' statements that they were instituting pricing actions that would offset the "vast, vast, vast majority" of inflation were not protected by the PSLRA safe harbor because they were "based on the asserted fact that Vertiv was actually implementing the pricing actions Defendants said they were implementing," when in reality they were not. R&R at 15.

*Fourth*, regarding scienter, the *Estée Lauder* court found that the plaintiffs adequately pleaded recklessness by alleging that the defendants there "had access to information that indicated Estée Lauder was relying on *daigou* sales," including detailed sales reports, and given the fact that the company's senior executives "were briefed on these pricing differentials." *Estée Lauder* at 12-13. The Court further found that, "[o]n top of this, both [Individual Defendants] made public statements about the importance of tracking [the relevant] data within the [company's] business model." Order at 13. The fact that the "[defendant] has spoken multiple times about *daigou*" further supported an inference of scienter. *Id*.

Hon. Ona T. Wang
April 4, 2025
Page 3

So too here. Defendants received daily reports about sales, pricing, inflation and profit margins (¶¶89, 192), and themselves repeatedly proclaimed that they personally reviewed that data in real time, "8 days a week," in addition to touting that they "h[eld] monthly reviews with each one of the businesses" with "very real-time updates" regarding pricing and inflation. ¶49. Several high-ranking FEs also confirmed the Individual Defendants personally participated in internal meetings—known as monthly or quarterly business reviews, *i.e.*, "MBRs" or "QBRs"—during which Vertiv's underpricing of deals was specifically discussed with and directly approved by the Company's most senior management. ¶¶84, 89, 92, 191-92. Indeed, the former Vertiv VP of Channel Strategies for the Americas, who personally participated in these meetings with Vertiv's CEO, Defendant Johnson, confirmed that it was "[Defendant] Johnson [who] agreed to do these deals without price increases." ¶84. Thus, here, like in *Estée Lauder*, a "wealth of [pricing and inflation] data [] was at [defendants'] fingertips," as Plaintiffs have "alleged a trove of information" Defendants had access to, which was confirmed by "public statements by [the Individual Defendants themselves] about . . . their attentiveness to [pricing and inflation] data." *See* Order at 13-14; R&R at 20 (finding scienter based on "reports of former employees [that] strongly indicate[d] that Defendants had up-to-date knowledge of pricing data and were approving large discounts throughout the Class Period," in addition to "Defendants' own representations").

*Finally*, while Defendants here have repeatedly asserted that Plaintiffs' FEs should not be credited because certain FEs only had "regional" leadership positions, were too "low-level," or had tenures that only covered portions of the Class Period (*see, e.g.*, ECF No. 66 at 5-6), the court in *Estée Lauder* rejected highly similar arguments in crediting the FE accounts. *Estée Lauder* at 8-10 (the "defendants demand a level of involvement the case law doesn't"). For example, Defendants here have argued that the account of FE-1should not be credited because "FE-1 was a regional VP who left Vertiv in March 2021," before the end of the Class Period. ECF No. 66 at 5. However, the *Estée Lauder* court found that "the fact that [the FE] was employed for only a portion of the class period isn't reason to discredit her statements." *Id* at 9. The court similarly rejected defendants' argument that a second witness' account should be discredited because she "left the company before the start of the class period" due to "her decade-plus tenure at Estée Lauder, coupled with her seniority and work in [relevant] areas." *Id*. And for a third witness, the Court held that contrary to defendants' claims, she "wasn't a low-level employee, but a member of senior leadership," and thus she "didn't need to be in the [specific] sales region or have access to aggregate sales data" as "her role in senior leadership . . . is enough." *Id.* at 9-10.

The Complaint here is similarly replete with detailed testimonials from numerous FEs who worked for Vertiv across the country, including numerous senior-level employees, and their collective experience spanned years prior to and during the Class Period. ¶82-112. Thus, like in *Estee Lauder*, the R&R correctly rejected Defendants' argument that Plaintiffs' FEs were unreliable and not in a position to know the pertinent information, determining that Plaintiffs had described their FEs "with sufficient particularity to support the probability that a person in the position occupied by the source would possess the information alleged." R&R at 10.

This decision therefore further supports the denial of Defendants' motion to dismiss. Plaintiffs are available to address any questions the Court may have concerning the outstanding issues on Defendants' motion to dismiss.

Hon. Ona T. Wang
April 4, 2025
Page 4

Respectfully submitted,

By: /s/ *Steven B. Singer*
Steven B. Singer (ssinger@saxenawhite.com)
Kyla Grant (kgrant@saxenawhite.com)
**SAXENA WHITE P.A.**
10 Bank Street, 8th Floor
White Plains, NY 10606
Telephone: (914) 437-8551

*-and-*

By: /s/ *James A. Harrod*
Hannah Ross (hannah@blbglaw.com)
James A. Harrod (jim.harrod@blbglaw.com)
**BERNSTEIN LITOWITZ BERGER
  & GROSSMANN LLP**
1251 Avenue of the Americas
New York, NY 10020
Telephone: (212) 554-1400

*Lead Counsel for Lead Plaintiffs and the Class*